Argued January 9, affirmed September 10, 1969

# ARCHDIOCESE OF PORTLAND, *Appellant, v.* COUNTY OF WASHINGTON ET AL, *Respondents.*

458 P2d 682

*Howard A. Rankin,* Portland, argued the cause for appellant. With him on the briefs were Shuler, Rankin, Myers & Walsh and Michael J. Walsh, Portland.

*R. D. Roberts,* Portland, argued the cause for respondents. With him on the brief was Ray D. Robinett, Hillsboro, Oregon.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin, Denecke and Langtry,* Justices.

O'CONNELL, J.

This is a declaratory judgment suit in which plaintiff seeks a decree declaring invalid an order of the Washington County Board of Commissioners denying plaintiff a conditional use permit to build a church, school and gymnasium facility in an area zoned for residential purposes. Defendants demurred to the peti-

---

* Langtry, J., did not participate in this decision.

tion on the ground that plaintiff's remedy is limited to a writ of review and that the court is without jurisdiction to grant declaratory relief. The demurrer was overruled whereupon defendants answered. Plaintiff filed a reply denying the affirmative allegations of the answer. After trial a decree was entered dismissing the complaint. Plaintiff appeals from the decree and defendants cross-appeal from the order overruling the demurrer.

The tract upon which plaintiff sought a conditional use permit to build its proposed church and school structures contains approximately 12 acres and lies just off Canyon Drive to the south. The application was made under the Washington County zoning ordinance which, after setting forth the purposes of the ordinance,[1] makes provision for the granting of conditional use permits as follows:

> "1901-1 The following uses, because of their public convenience of necessity or because of the effect such uses might have upon surrounding properties, may be allowed in the indicated zones by the Planning Commission and the County Court, after due notice and a public hearing and finding that such a conditional use is not at variance with the various elements or objectives of this code and the comprehensive plan."
> "*   *   *   *   *

---

[1] Section 101-2 sets forth the purposes of the ordinance as follows:
> "The purposes of this ordinance are to guide and encourage the most appropriate use and development of land within the County, to stabilize and protect the value of property, to provide adequate light, air and reasonable access to secure safety from fire and other dangers, to prevent overcrowding of land, to facilitate adequate provisions for transportation, water, sewage, schools, parks and other public improvements and in general promote the public health, safety and welfare, all in accordance with a comprehensive development plan which is a part of this ordinance."

"1903-6 Churches and Accessory Uses
Zones Allowed
   [The zone classification of plaintiff's property is included in the list of zones allowed.]
"*   *   *   *   *

"1903-33 Schools, Nursery, Public, Parochial or Private
Zone Allowed
   [The zone classification of plaintiff's property is included in the list of zones allowed.]
"*   *   *   *   *

"1902-1 Status
   1902-1.1 A conditional use shall not be construed to be a zone change and shall be granted by the Planning Commission and by the County Court for the specific use requested and subject to such qualifying conditions imposed at the time of the hearing or as may be hereinafter provided."

Upon receiving plaintiff's application for a conditional use permit a study of the probable consequences of the proposed use was made by a division of the Washington County Planning Commission and on the basis of a study a recommendation was made to the Planning Commission that the application be denied. After a public hearing the Planning Commission recommended that plaintiff's application be denied. The basis for this recommendation was described by the Planning Director in the proceedings before the Board of County Commissioners as follows:

   "1. That the site has traffic problems that, in their opinion, would not be conducive to construction other than residential;
   "2. There is insufficient access to the site. I think it is stated insufficient. Perhaps the word 'inadequate' should be substituted here.
   "3. Traffic that would be generated on the residential feeder streets in the area. would not be in

the interest of public safety or general welfare of the surrounding residential area."

Plaintiff appealed to the Board of Commissioners. A hearing was held at which both the proponents and the opponents of the plaintiff's proposal presented their respective points of view. The Board also examined maps and photographs including aerial photographs of the proposed building site and surrounding area. Four members of the Board later inspected the area of the proposed development. Based upon this information and the recommendation of the Planning Commission the Board denied plaintiff's application.

Plaintiff then brought this suit for a declaratory judgment alleging that the refusal of the Board to grant plaintiff's application for a conditional use permit was "arbitrary, unreasonable, capricious, discriminating and without substantial relation to the public interest, health, comfort or welfare."

On appeal plaintiff contends that the trial court erred (1) in finding that there was substantial evidence to support defendants' denial of plaintiff's application, and (2) in its finding that there was no discrimination against plaintiff in denying its application when permits had been granted to all other applicants under the same or less favorable conditions.[9]

---

· [9] Plaintiff alleged in its complaint that "forty-three churches and schools have been granted conditional use permits to build structures in the east end of said county for the purposes of education and worship in residential areas prior to plaintiff's application for a permit and after said application was filed. Plaintiff's application was the first and only such application denied since the enactment of the zoning ordinance for Washington County and such action on the part of the defendant Washington County constitutes a violation and contravention of Section 1 of Article XIV of the Amendments to the Constitution of the United States in that plaintiff is deprived of equal protection and

This case is controlled by *Milwaukie Company of Jehovah's Witnesses v. Mullen et al*, 214 Or 281, 330 P2d 5, 74 ALR2d 347 (1958). In that case we sustained the action of a city council in denying a conditional use permit. We explained that the council, in passing upon an application for a special use permit, acts as an administrative agency and that its action is presumed to be regular. More specifically we said:

"* * * Its action will be presumed valid, reasonable, correct, taken in knowledge of material facts, justified by the facts, made upon full hearing or after giving all interested parties a reasonable opportunity to be heard and upon appropriate evidence duly considered and properly applied." 214 Or at 292.

The reasoning supporting this conclusion is adequately developed in that case and need not be repeated here. Although plaintiff has attempted to point out differences between the present case and *Jehovah's Witnesses v. Mullen et al*, supra, we are of the opinion that the cases are indistinguishable.

In *Roseta v. County of Washington*, decided this day, we held that where the county amends a zoning ordinance to permit a use inconsistent with the permissible uses designated in the original ordinance the presumption of regularity usually given to legislative action is not applicable. The same principle was recog-

---

benefit with regard to its property rights and its aforesaid land and buildings as compared with the protection and benefit accorded to other property owners in said County. Said ordinance as applied to this defendant is arbitrary and discriminatory and in violation of Section 20 of Article I of the Constitution of the State of Oregon, which provides that no law shall be passed granting to any citizen or class of citizens privileges or immunities which upon the same terms would not equally belong to all citizens."

nized in *Smith v. County of Washington,* 241 Or 380, 406 P2d 545 (1965).

■ As we explained in the *Smith* case, "Even though there is a presumption of legislative regularity when the governing board of a county enacts a change in a zoning ordinance, the antithetical character of spot zoning and its recognized erosive effect upon the comprehensive zoning plan automatically tends to neutralize, if not to overcome, the presumption in the particular case." 241 Or at 384.

Experience has demonstrated that frequently zone changes are made by governing boards without adequate consideration of the effect which the change will have on the over-all plan. It is known that zone changes are commonly made simply because the change is requested and no one in the neighborhood has an objection to it. Knowing this it would not be realistic to presume in a particular case that the governing board acted regularly in the sense that it duly considered the effect which the change would have on the comprehensive plan.

The same considerations do not obtain however when, as in the case before us, the governing board passes upon an application for a conditional use. The original ordinance itself expressly provides for the specified "conditional uses" which might be made in the zone. In this sense the granting of an application for a conditional use does not constitute a deviation from the ordinance but is in compliance with it.[9] The Washington County ordinance expressly declares that "A conditional use shall not be construed to be a zone change * * *." One author has explained that

---

[9] See Pomeroy, Zoning Round Table: Losing the Effectiveness of Zoning, Planning and Civic Comment, p. 8 (Oct. 1941).

the "granting of a conditional use permit or exception permits a use contemplated by the zoning ordinance; a variance permits a use not contemplated by the ordinance except where necessary to avoid hardship."④ Further, it may be observed that generally the conditional uses specified as permissible in an R-10 zone are uses which are compatible with the purpose of the zone. As the New Jersey Supreme Court observed, "Exceptions fulfill the practical recognition that certain uses of property are compatible with the essential design of a particular zone although the use is contrary to the restrictions imposed thereon."⑤

Thus the Washington County ordinance provides for such compatible uses as auditoriums, boat moorages, cemeteries, churches, colleges, community buildings, golf courses, greenhouses, hospitals, libraries, etc. Because these uses are generally compatible with the design of the zone the possibility that a permitted use will not comport with the comprehensive plan is not as great as it is when a variance or amendment is sought. Nor is there the same likelihood that such uses will be sought for and obtained as a matter of special privilege by those seeking private gain as there is where a variance or amendment is requested.

But more important than these considerations is the fact that the ordinance itself reveals the legislative plan forecasting the likelihood that certain specified uses will be needed to maximize the use of land in the zone for residential purposes. The Board's discretion

---

④ Gaylord, Zoning: Variances, Exceptions and Conditional Use Permits in California, 5 UCLA L Rev 179 at 194 (1958). In Lazarus v. Village of Northbrook, 31 Ill2d 146, 199 NE2d 797 propriately "included in the residential category of special uses."
⑤ Ranney v. Instituto Pontificio Delle Maestre Filipini, 20 NJ 189, 199, 119 A2d 142 (1955).
(1964) the court described a conditional use (hospital) as ap-

is thus narrowed to those cases in which an application falls within one of the specified uses. The fact that these permissible uses are pre-defined and have the legislative endorsement of the governing body of the county as a tentative part of the comprehensive plan for the area limits the possibility that the Board's action in granting a permit will be inimical to the interests of the community.[*] The suspicion which is cast upon the approval of a change involving an incompatible use (as, for example, the changes sought in *Smith v. County of Washington,* supra, and *Roseta v. County of Washington,* supra) is not warranted where the change has been anticipated by the governing body. Therefore, unlike the spot zoning cases the granting of permits for conditional uses is not likely to cause the "erosive effect upon the comprehensive zoning plan" described in *Smith v. County of Washington,* supra.

■ Absent the dangers incident to "spot zoning" the presumption of legislative regularity can be given its full effect. Under such circumstances the only function of this court and the trial court in reviewing the action of the Board of County Commissioners is to decide whether the Board acted arbitrarily or capriciously. It is not our function to weigh the evidence for the purpose of determining whether in our judgment the Board correctly decided that the use sought would result in a detriment to the community as a whole. It is possible, as plaintiff contends, that the Board erred in concluding that the proposed use would cause traffic congestion or a fire hazard or other harm to the citizens in that area of the county. But the members of the Board, as representatives of the people who

---

[*] Judicial Control Over Zoning Boards of Appeal: Suggestions for Reform, 12 UCLA L Rev 937 at 944 (1965).

elected them, have the privilege of erring in making their decisions as long as they abide by the required procedures and their conclusion is not patently irrational. We examine the record of the proceedings before the Board only to determine whether those proceedings were fairly conducted in accordance with the requirements of the ordinance and that there was a rational basis for the Board's decision. It is important to bear in mind that in these cases we and the trial court are reviewing the legislative action of a governmental unit engaged in carrying out a land use policy formulated by it. The basis for that action need not be found in "evidence" as we use that term in connection with the trial of cases before a court. The ordinance requires the Planning Commission to hold a public hearing on all proposed changes and the Board must also hold a public hearing on all appeals from the Planning Commission. But these public hearings are not trials and the views expressed by those who attend are evidence only in the broad sense that the Board may consider the points of view expressed at those hearings in reaching its conclusion.

■ Plaintiff contends that at the time the Board made its decision it did not have access to information concerning the extent of traffic in the area or possible future traffic and also that the Board "received nothing in the way of information from its Planning Commission." As we have pointed out above, the Planning Director testified at the hearing before the Board reporting that the Planning Commission had found that the proposed use would create problems of traffic and access. Persons present at the hearing also predicted that these problems would arise if the application were granted. Thus it appears that at the time the Board made its decision it had ample information to form a

judgment as to the advisability of granting the application. Whether it got this information from those who testified at the hearing or obtained it through the study made by the zoning division is not of any significance in our review of the Board's action. There is enough in the record to assure us that the Board did not act arbitrarily or capriciously. That is the only surveillance we have the power to exercise over the Board in its exercise of a legislative function. The Planning Commission reported its findings to the Board. These findings have been set out above. The Board having approved the recommendation of the Commission, it may be assumed that the Commission's findings were adopted.[7]

■ Plaintiff contends that the equal protection provisions of the Fourteenth Amendment of the United States Constitution and Article I, § 20 of the Oregon Constitution were violated by the Board's action in that previously all other applicants had been granted permits under circumstances which were the same or less favorable than those involved in plaintiff's proposed use. Plaintiff expressly disavows any accusation that the Board denied plaintiff's application because of any hostility to or prejudice against plaintiff. It is claimed only that there was discrimination in a legal sense.

■ Implicit in the plaintiff's contention is the assumption that the Board of County Commissioners of Washington County is bound by the action of previous Boards of County Commissioners in that county. This assumption is not sound. Each Board is entitled to make its own evaluation of the suitability of the use sought by an applicant. The existing Board is not re-

---

[7] Sandler v. Board of Commissioners of City of Trenton, 126 N J L 392, 19 A2d 788 (1941).

quired to perpetuate errors of its predecessors. Even if it were shown that the previous applications were granted by the present Board, there is nothing in the record to show that the conditions now existing also existed at the time the previous applications were granted.[9]

Since the decree of the trial court denying relief to the plaintiff must be affirmed for the reasons stated above, it is not necessary to consider defendants' cross-appeal.

The judgment of the trial court is affirmed.

---

[9] Minney v. City of Azusa, 164 Cal App2d 12, 330 P2d 255 (1958).