Argued March 29, reversed May 4, 1972

ERICKSON, *Appellant, v.* CITY OF
PORTLAND ᴇᴛ ᴀʟ, *Respondents.*

496 P2d 726

*William E. Hanson,* Portland, argued the cause for appellant. With him on the brief were Dardano, Mowry & Hanson, Portland.

*Ellis E. Gerdes,* Senior Deputy City Attorney, Portland, argued the cause for respondents. With him

on the brief was Marian C. Rushing, City Attorney, Portland.

Before SCHWAB,* Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Plaintiff, owner of real property in the affected area, filed a petition for writ of review in the circuit court after the Portland City Council granted an application for a variance to the owners of real property, Mr. and Mrs. Cherkezov, and to Mr. Lindquist, the optional purchaser.[1] The circuit court upheld the allowance of the variance and the plaintiff appealed.

The Cherkezovs purchased the real property in 1966. The lot was originally platted as 100 feet wide. A previous owner constructed the house which is still on the property and is presently occupied as the Cherkezovs' home. The house is situated so that it extends over the midline of the lot leaving 30 feet vacant on the north side after allowing for the required side yard. At some point before Mr. and Mrs. Cherkezov acquired the land, an additional 15 feet were purchased from the adjoining lot on the north and there are now 45 feet of empty space.

Mr. Cherkezov testified that several people came to him and inquired about purchasing the land. Mr. Cherkezov is over 75 years old and finds it difficult to maintain the yard, so he and his wife decided to sell. The area is zoned R5L, which requires a minimum 50 foot frontage and an area of 5,000 square feet. Since

---

* Schwab, C. J., did not participate in this decision.

[1] The appeal was dismissed as to Mr. Lindquist, memorandum, March 30, 1972.

the land to be sold has only a 45 foot frontage and contains 4,500 square feet, it is not usable without relief from the requirements of the zoning ordinance. Mr. and Mrs. Cherkezov therefore applied for a variance.

Their first application in 1967 requested a variance so that an existing house could be moved onto the property. This application was opposed by the neighbors and was turned down by the variance committee of the planning commission of the city of Portland. A second application in 1968 in which the applicants proposed to build a new house on the site also was turned down by the variance committee.

Before their third application the Cherkezovs, now joined by Mr. Lindquist, solicited written approval from neighbors. This third application, which was similar to the second in that a new house was proposed, was rejected unanimously by the variance committee for the following reasons:

"The Variance Committee is in accord with the concept of providing single-family homes within the City, but cannot approve a variance request that would support lot-split selloffs which create building sites with less than the minimum area and dimensions as required by the Code and also be out of character with the neighborhood development pattern.[@] In addition, the Committee feels that such a variance would also be, in effect, a spot change to a less restrictive zone."

The applicants then exercised their right to appeal from an adverse decision of the planning commission to the city council. After hearing testimony on February 10 and March 17, 1971, the council granted

---

[@] The land is in an established neighborhood where lots vary from 5,000 to 15,000 square feet.

the variance. The only reason given for the sale and variance was the hardship of caring for the yard. Plaintiff Erickson lives across the street and opposed the variance because it would violate the prevailing pattern of lot sizes as well as on other grounds.

The plaintiff then filed a petition for writ of review. After a return had been made and after hearing oral argument, the trial court found the order of the city council granting the variance invalid in the absence of any findings of fact and remanded the case for findings.

When the question of the variance came before the city council after the remand, the council made findings of fact based on the prior testimony. It did not hold further hearings but listened to arguments of counsel.[9] The city council affirmed the variance and made the following findings of fact:

"Code requirements of area in dividing present lot presents practical difficulty because of location of existing house.

"Code requirements as to lot coverage and yard dimensions of new site will be met and exceeded, in view of changes of design made by applicant.

"New house will be built at value of approximately $19,000, and will enhance general area and promote residential quality, and the great majority of adjacent property owners most affected do approve.

"Commercial and apartment zoning in County area about 300' away.

"Age of applicant presents personal difficulties in maintenance.

---

[9] Counsel for applicants suggested that the present location of the existing house was sufficient basis for granting the variance and stated that the cost of moving the house would be $4,500 or more and exceed the cost of the lot.

"Area deficiency proposed will not be obtrusive, nor adversely affect the general neighborhood.

"Grounds: Practical difficulty resulting from literal enforcement of the code."

The city council then filed a copy of its proceedings and findings of fact as a supplemental return with the circuit court. Plaintiff objected to this return

"* * * on the grounds and for the reason that the Findings of Fact contained in said Return are not supported by the evidence in the record herein; and, further, that said Findings are legally insufficient to support a Zoning Variance in the within captioned matter."

The trial court found that the findings of fact were sufficient to support the zoning variance and were supported by the evidence. The plaintiff then filed his notice of appeal.

Authority to grant variances from zoning requirements in the area of residential lots is contained in section 33.98.010 of the City Code of the city of Portland:

"33.98.010 Adjustments and variances.

"Where unquestionably and clearly, practical difficulties, unnecessary hardships, or consequences inconsistent with the general purpose of this title may result from the literal interpretation and enforcement of the provisions thereof, the variance committee, upon receipt of a verified application from the owner of the property affected, stating fully the grounds of the application and facts relied upon and upon its own further investigation, may grant adjustments or variances with such conditions and safeguards as it may determine, in harmony with the general purpose, intent, and spirit of this title, so that the public health, safety and welfare shall be secured, and substantial justice shall be done.

"Such adjustments or variances shall be restricted to unique, unusual or peculiar circumstances and they shall be limited to the following matters:

"(a) Modification of * * * minimum lot size requirement for a single family dwelling, lot coverage, floor area, height, and yard regulations for principal, transitional, and accessory uses in any zone as may be necessary to secure an appropriate improvement of a lot which is of such shape, or so located with relation to surrounding development or physical characteristics, that it cannot otherwise be appropriately improved without such modification.

"* * * * *."

■ The variance committee, and the city council in the case of appeals, have been granted broad discretionary power over the granting of variances. It is their province to decide disputed issues of fact. When an order is challenged as arbitrary by writ of review, it is our duty to affirm if there is any evidence to support the decision of the lower tribunal. *Evans v. Schrunk*, 4 Or App 437, 443, 479 P2d 1008 (1971); *City of Portland v. Garner et al*, 226 Or 80, 92, 358 P2d 495 (1960).

Variances traditionally have been considered escape valves to allow property owners relief from zoning restrictions which, when applied to particular land, have the result of making that land completely unusable, or usable only with extraordinary effort. The burden is on the applicant to show the hardship which the zoning regulations impose on his property. By providing for variances, zoning plans allow sufficient flexibility to respond to individual situations that comprehensive zoning ordinances cannot consider. The usual presumption of regularity therefore applies.

*Archdiocese of Port. v. Co. of Wash.,* 254 Or 77, 84, 458 P2d 682 (1969); *See Rust v. City of Eugene,* 3 Or App 386, 474 P2d 374 (1970).

■ Changes in lot size are specifically provided for but they are limited to "unique, unusual or peculiar circumstances." These circumstances must arise out of conditions inherent in the land that distinguish it from other land in the general neighborhood. *See Matter of Vil. of Bronxville v. Francis,* 1 App Div 2d 236, 150 NYS2d 906, *aff'd* 1 NY2d 839, 153 NYS2d 220, 135 NE2d 724 (1956); Annotation, 168 ALR 13 (1947); 3 Anderson, American Law of Zoning 32, § 14.55 (1968).

■ Similarly, the age or physical condition of the owner cannot justify a variance which allows a permanent deviation from an existing plan. *See* Anderson, supra, §§ 14.49, 14.50.

One author has cautioned:

"* * * Granting a variance for reasons other than extreme hardship may seem innocuous in its present impact on the immediate neighborhood. However, 'long-range planning may show that this will result in a flood of such demands, or be inconsistent with the desirable allocation of land uses for commercial purposes in the entire municipality, or hinder the proposed future evolution of the area into a fine residential one.' Thus, improper variances not only threaten neighborhood integrity and undercut the protective purposes of zoning, but they also challenge the objectives of comprehensive urban planning." Shapiro, *The Zoning Variance Power—Constructive in Theory, Destructive in Practice,* 29 Md L Rev 3, 10 (1969).

The granting of the variance in this case which rests on the physical location of an existing structure and the age of the owner, without evidence of unique,

unusual or peculiar circumstances, is invalid as a matter of law.[4]

Reversed.

---

[4] It is not necessary to discuss plaintiff's other assignments of error.