Argued May 17, reversed June 9, petitions for rehearing denied
June 30, petitions for review denied August 1, 1972

SAMMONS ET AL, *Appellants, v.* SIBARCO
STATIONS, INC. ET AL, *Respondents.*

497 P2d 862

44

*E. R. Bashaw,* Medford, argued the cause for appellants. With him on the briefs was John L. Flynn, Medford.

*James A. Redden, Jr.,* Medford, argued the cause for respondents. With him on the brief were Collins, Redden, Ferris & Velure, Medford, for respondent Sibarco Stations, Inc.; Sidney E. Ainsworth and Davis, Ainsworth & Pinnock, Ashland, for respondents Everett H. McGee and Donzella McGee; and Ronald L. Salter, Ashland, for respondent City of Ashland.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

In this zoning case the Ashland City Council granted a conditional use permit allowing the construction of a service station to defendant Sibarco, the applicant and optional purchaser of the land involved. Plaintiffs filed a class action for declaratory relief in the circuit court in which they alleged that the action of the city council violated the plan for residential development of the area and that the city council failed to make findings as required by ordinance. The circuit court upheld the city's action and plaintiffs appealed.

Defendants McGee are the present owners of three adjoining Tax Lots numbered 6000, 6100 and 7000. When the city of Ashland enacted its first zoning ordinance in 1946, the area in which these lots are located was zoned residential. Lot 6000, however, had an existing grocery store which was a nonconforming use. Across the street were other nonconforming uses —a sweet shop, plumbing shop and a beauty parlor.

The zoning remained unchanged until 1964, when the city passed a comprehensive zoning ordinance. The zoning for defendants' three lots as well as the zoning for the land across the street which was occupied by nonconforming uses was changed to C-1 or Commercial-Retail District at that time. All three lots owned by defendants McGee appear to have been rezoned for the reason that part of lot 6100 had been converted to offstreet parking and the store owners were considering removing existing buildings and extending the parking area to lot 7000. (A 1959 ordinance had allowed the expansion of nonconforming businesses for parking purposes.)

In 1967, subsequent to the date of the comprehensive zoning ordinance, the city adopted a comprehensive plan. While the comprehensive zoning ordinance of 1964 established precise zoning requirements, the comprehensive plan had more general aims:

"This Comprehensive Plan is a guide to the growth and development of Ashland and vicinity. It embodies the three elements of land use, community facilities and circulation. During preparation, the City Council and Planning Commission have [sic] the opportunity to consider alternatives, to define policies for future growth and to develop a plan that reflects these policies. After the plan is adopted it enables the city to review all civic development and annexation proposals in the light of defined goals and enables public agencies and private property owners to relate their projects to the plan or to suggest modifications of the plan.

"This plan should be viewed as a summary of the desires and goals of the people of Ashland at this time; as the community grows and conditions change, the plan and policies should be continually reconsidered and amended to reflect changes. No attempt was made to establish a population pro-

jection and plan to fit the projection, nor was there an effort to place a year upon which this Plan would be realized. Accepting the premise that this area will grow and that a great many more people will desire to live in Ashland, we asked the questions, 'What uses best belong here?' and, if completely developed along these lines, 'What community facilities and streets would be appropriate?'. This plan is intended to provide the answer to these questions and, with this in mind, the Plan if [sic] offered as a starting point and one which hopefully will be studied, amended where necessary, then adopted and used.

"* * * * *

"Zoning. Zoning is probably the most important legal device available for plan implementation, and thus is sometimes confused with the plan itself. While the plan proposes the pattern of future land use in a general manner, the zoning ordinance actually governs land use with definite and precise requirements. * * *"

■ The comprehensive plan predicted that the subject area would become high density residential. Shortly after the plan was adopted the land designated C-1 across the street from the grocery store was rezoned residential and purchased by the high school. This change left defendants' property as the only commercial land in the area. When the planning commission made its required annual review of the comprehensive plan, it did not recommend any zone change. Therefore, plaintiffs allege that the C-1 zone for defendants' three lots is in effect spot zoning. They also contend that the granting of a conditional use permit for a service station was contrary to the comprehensive plan and to the commercial zoning for the grocery store that provided for a neighborhood, pedestrian-oriented business rather than a car drive-in service. This argu-

ment fails because the lots were zoned commercial in a comprehensive zoning ordinance which predated the city's comprehensive plan.① The fact that defendants' land is the only commercial property in the area is the result of subsequent events. Although there was no necessity to change the zoning from residential, since the grocery store could continue as a nonconforming use, the decision to make the zoning conform to the actual use of the property was taken after study by the planning commission with the advice of a consultant trained in city planning.②

■ Having decided that the C-1 zoning designation is valid, it is now necessary to consider the city council's action in granting the conditional use permit. A service station is a conditional use in a C-1 zone and can be granted upon application as follows (per Zoning Ordinance of the City of Ashland, Ordinance No. 1361):

"Section 39. Conditional Use Permits.

"* * * * *

"(3) Action by Commission.

"(a) In order to grant a conditional use permit, the Commission *must find* that the establishment, maintenance or operation of the use applied for will not, under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort or general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to prop-

---

① As to the effect of the comprehensive plan in regard to prior zoning ordinances so far as counties are concerned, *see* ORS 215.233.

② A similar situation was involved in Roseta v. County of Washington, 254 Or 161, 163, 458 P2d 405 (1969).

erty and improvement in the neighborhood or to the general welfare of the City. [Emphasis supplied.]

"\* \* \* \* \*

"(4) <u>Appeal</u>.

"(a) In case the applicant or other affected are not satisfied with the action of the Commission, they may, within 15 days after the Commission action, appeal in writing to the Common Council.

"(b) The Common Council shall set date for public hearing and shall give notice thereof in the manner provided in Section 39 (2). Notice shall also be give[n] to the Commission of such appeal and the Commission shall submit a report setting forth the reason for action taken, or shall be represented at the hearing.

"(c) The Common County [Council] shall render its decision within 60 days after the filing of such appeal. Said decision shall include a finding as to whether the qualifications under Section 39 (3)(a) apply to the application.

"\* \* \* \* \*"

After the application was filed, the planning commission held public hearings. Without making any findings, the commission voted four to three to allow the permit subject to conditions to be set by the city administrator. The minutes contain no testimony, merely the names of some of the people who spoke at the hearings. At the request of the chairman, two members of the commission wrote majority and minority reports after the decision was made. The majority report does not contain any findings and neither report was adopted by the commission or by the council.

On appeal, the council affirmed the planning commission but made no findings.

■ Although the granting of a conditional use is contemplated by the zoning ordinance and accorded a presumption of legislative regularity, *Archdiocese of Port. v. Co. of Wash.,* 254 Or 77, 83, 458 P2d 682 (1969), the absence of findings precludes judicial review as to whether the findings are sufficient as a matter of law.[9] We are not in a position, on the record before us, to make a determination as to whether the trial court's upholding of the grant of the conditional use permit was proper or not. Plaintiffs' objection that the city council failed to make findings is well taken.

Reversed.

---

[9] As to the advantages of insisting upon findings where required by law, *see,* 2 Davis, Administrative Law Treatise 444, § 16.05 (1958); *see also,* Roseta v. County of Washington, supra at 168-70; Jehovah's Witnesses v. Mullen et al, 214 Or 281, 330 P2d 5, 74 ALR2d 347 (1958), *appeal dismissed* 359 US 436, 79 S Ct 940, 3 L Ed 2d 932 (1959).