Argued April 18, reversed and remanded July 29, 1974

WEST, *Appellant, v.* CITY OF
ASTORIA (No. 29185), *Respondent.*
524 P2d 1216

*Robert P. VanNatta,* St. Helens, argued the cause for appellant. With him on the brief were VanNatta & Petersen, St. Helens.

*Bradley C. Grove,* Astoria, argued the cause for respondent. With him on the brief were Anderson, Fulton, Lavis & Van Thiel, Astoria.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

This case involves a dispute between plaintiff and the City of Astoria (City) over the granting of a conditional use permit by the city planning commission to the Clatsop Youth Development Association (CYDA), a private nonprofit corporation. The conditional use permit allowed CYDA to operate a center for the care of disturbed youth on leased premises adjoining plaintiff's property (an apartment house).

After a public hearing the planning commission granted the permit. Plaintiff appealed the matter to the city council which affirmed the action by the planning commission.

On December 19, 1972, plaintiff commenced a writ of review proceeding in the circuit court challenging the above actions. The circuit court dismissed the petition and entered judgment in favor of the City.

Plaintiff appeals contending that the trial judge erred in the following particulars:

(1) CYDA had no standing to request a conditional use permit;

(2) City failed to provide appeal forms as required by the zoning ordinance;

(3) The city council refused to conduct a public hearing;

(4) Neither the city council nor the planning commission made any findings of fact; and

(5) The proposed use is not a permitted use.

The essential facts are as follows:

CYDA is a child-caring agency authorized by, and regulated pursuant to, ORS 418.205 et seq.

Under the City's zoning ordinance scheme, authority to issue a conditional use permit is delegated to the city planning commission. The ordinance specifically enumerates the authorized conditional uses and the standards governing such uses. It provides that the commission must both publish and deliver to neighboring owners a notice of, and conduct, a public hearing within 40 days of the filing of the application for a conditional use permit. The ordinance further provides that an action or ruling of the planning commission can be appealed to the city council within 15 days after the commission makes its decision.

On August 10, 1972, CYDA applied to the planning commission for a conditional use permit to oper-

ate a youth care center in a building owned by the Roman Catholic Archdiocese of Portland and being used by the Star of the Sea Catholic Church as a convent to house nuns. The subject property is in an R-3 (higher-density residential) zone.

At the same time the above application was filed, the applicant also filed a letter on behalf of the Parish Council of the Star of the Sea Catholic Church which stated as follows:

"At the present time, the Parish Council of Star of the Sea Catholic Church is in the process of negotiating a lease with the Clatsop Youth Development Association for the lease of the Convent located at 636 Fourteenth Street. These negotiations cannot be completed until the zoning is approved for the Convent to be used as an adolescent Care Center. To this extent, the Parish Council joins with the Clatsop Youth Development Association in its application for a conditional use permit."

The planning commission then set the matter for hearing and mailed notices of hearing to adjoining property owners and published a notice of hearing. A written notice was mailed to plaintiff. Plaintiff filed with the planning commission a written objection to the granting of CYDA's application.

Also available at the hearing was a resume as to the nature of CYDA's proposed organization:

"Clatsop Youth Development Association is a nonprofit corporation with a board of directors consisting of twelve people from different areas of Clatsop County, who were asked by the Mental Health Clinic, the Juvenile Department and Children's Services Division to form a corporation for the purpose of opening a home for adolescents who can benefit from residential treatment.

"* * * * *

"Adolescents to be treated are youngsters from the age of 13 to 16 inclusive who need to be removed from their families, but whose needs cannot be met by foster homes. These youngsters may be behaviorally and socially maladjusted and/or out of parental control. The home will serve approximately ten to twelve youngsters at a time from Clatsop County. To begin with, girls only will be taken, but as soon as the center is operating smoothly boys will also be admitted. The anticipated average time an adolescent will be in the home is six months.

"Staff will consist of a full time director, two full time live-in child care workers, a part-time child care worker, a part time secretary, and a cook.

"Funding: $9250 has already been appropriated by the County Commissioners as Clatsop County's share of the yearly budget. This will be matched by the state through Children's Services Division and the remainder of the yearly anticipated budget of $61,000 will be paid by the Federal Government through Title IV A funds.

"* * * * *"

The minutes of the hearing disclose that a considerable number of persons appeared at the hearing. Some favored the proposal, while others opposed it.

At the conclusion of the hearing (September 19, 1972), the planning commission approved an oral motion "to approve the request."

Within the 15-day period allowed by ordinance a notice of appeal to the city council was filed over the signatures of some 17 citizens including plaintiff. The appeal included a specific request for a public hearing.

On October 16, 1972, plaintiff's notice of appeal was read into the minutes of the city council. The minutes show that the city manager then informed the council that

"* * * no action can be taken by the Council until a report comes back in writing from the Planning Commission. At that time, the Council will decide whether to have a public hearing."

Then, in accordance with the municipal procedure, the planning commission made a written report to the city council which concluded with a recommendation that the previous action of the commission be affirmed without another public hearing. This report, which was approved by the commission October 17, contains the following in the nature of findings:

"After listening to the public hearing and after questions to those in the audience, the Commission moved to approve the conditional use with the stipulation that a suitable fence be placed on the East and South sides of the property to separate the facility from neighboring property. The motion was passed unanimously.

"The Commission has reviewed the appeal and their original decision, and recommends that the approval be allowed to stand. The Commission feels that there are adequate plans for supervising the facility and the children. The City staff has inspected the building and made recommendations to upgrade it for adequate public safety. The operators will have to answer to a number of governmental agencies which are available for public criticism of the operation of the Center."

The record also discloses several letters which were directed to the city council, including a letter from the applicant, CYDA, which set forth CYDA's contentions and urged that the council refuse a hearing to the objectors.

On November 6, 1972, the city council proceeded to consider the appeal at a regular meeting of the council. We find nothing in the record to indicate that prior formal notice of the city council's consideration was published or was given to plaintiff and the others who signed the appeal petition. The minutes indicate, nevertheless, that the council did have a hearing, and that at least seven interested parties were given the opportunity to present their views prior to the vote. Plaintiff was not among them. After hearing from these citizens the council voted unanimously to affirm the decision of the planning commission.

■ Plaintiff's first two assignments may be considered together. It is our conclusion that CYDA had sufficient standing to make the application. Section 10.420, Astoria Zoning Code; Annotation, 89 ALR2d 663 (1963), 85-91 ALR2d Later Case Service 297 et seq (1968), including Supp 147 (1974). In any event since the Parish Council of the Star of the Sea Parish joined in the application, this fact would be conclusive on the question of standing.

■ Second, the failure of the City to provide the appeal forms specified in the zoning ordinance, while a technical irregularity, would not be sufficient to amount to a denial of due process of law requiring us to overturn the proceedings. Plaintiff was not prejudiced. The record shows that plaintiff was informed of his right to appeal, and that an appeal was prepared and was duly received and filed by the planning commission.

Plaintiff's third assignment raises a more substantial question: Was the city council required to conduct a de novo-type public hearing?

We note that the zoning ordinance of defendant City does not require that advance notice be given or a public hearing held on a zoning appeal to the city council from a decision of the planning commission.

■ First, we agree with plaintiff that plaintiff and all those who signed the appeal petition were entitled to reasonable advance notice of the council's hearing on plaintiff's appeal. The failure of the City to give plaintiff such notice, unless waived or excused, was reversible error. The news article published in the local press reporting that the matter would be considered at the city council meeting on the evening of November 6, 1972, referred to and relied upon in defendant's brief, would not constitute legal and sufficient notice of the scheduled hearing. *McCarthy v. Coos Timber Co.*, 208 Or 371, 302 P2d 238 (1956); *O. & C. R. R. Co. v. Lane County*, 23 Or 386, 31 P 964 (1893). *See also*, Annotation, 38 ALR3d 167 (1971).

Second, for reasons which follow, we do not agree with plaintiff's contention that the council was required to conduct another full-scale, de novo-type evidentiary hearing on plaintiff's appeal.

Plaintiff argued that the rules laid down by our Supreme Court in *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973), apply; that *Fasano* impliedly overruled *Archdiocese of Port. v. Co. of Wash.*, 254 Or 77, 458 P2d 682 (1969); and that the requirements set forth in *Fasano* must be met here.

We begin our consideration of the above contention by pointing out that the city council completed its action on plaintiff's appeal on November 6, 1972. The *Fasano* decision was handed down by our Supreme Court on March 2, 1973, after plaintiff had already

filed his petition for a writ of review in circuit court. Thus the case at bar was pending in circuit court at the time *Fasano* was decided.

Assuming for purposes of argument only that *Fasano* is applicable to municipal conditional-use proceedings, and should be applied retroactively to the case at bar, we do not read *Fasano* as requiring that plaintiff be afforded two full-scale, de novo-type evidentiary hearings on his objections to the granting of the conditional use permit involved here. We therefore need not consider if *Fasano* impliedly overruled *Archdiocese* where conditional use permits are concerned.

■ We know of no authority holding that, in the absence of a statutory requirement, due process requires that a citizen objecting to a particular administrative action be afforded two de novo-type public hearings. Indeed, due process requirements are usually held to be satisfied if a hearing is given either by the agency or by the reviewing court at any time before the governmental action becomes final. *Mallatt v. Luihn et al,* 206 Or 678, 294 P2d 871 (1956). *See also,* 1 Davis, Administrative Law Treatise § 7.10 (1958).

■ We conclude that under the City's zoning ordinance one full-scale evidentiary public hearing before the planning commission is all that is required to provide plaintiff with due process of law, and that the city council is not required to conduct a second de novo evidentiary public hearing, provided, however, that an adequate record of the original hearing before the planning commission is made, and that proper and adequate findings, which are discussed later in this opinion, are made prior to official action on the permit

application. *Regan v. Council of City of San Mateo,* 42 Cal App2d 801, 110 P2d 95 (1941).

This brings us to plaintiff's next contention: That the order granting the conditional use permit must be set aside because there were no findings of fact made by the planning commission or the city council, citing *Sammons v. Sibarco Stations, Inc.,* 10 Or App 43, 497 P2d 862, Sup Ct *review denied* (1972).

We note that in plaintiff's complaint his allegations concerning failure to make findings are directed only to the failure by the city council to make findings. We find no allegation therein directed to the failure of the planning commission to make formal findings.

As we have already stated, if the proper procedures had been followed by the planning commission, the city council was under no duty to conduct a second full-scale, de novo-type public hearing on plaintiff's appeal. However, we have the further question: Was the city council required to make written findings?

■■ The purpose of written findings by an administrative body charged with the responsibility for taking such actions as the granting of a conditional use permit, is in order that the reviewing court can determine whether the administrative body acted according to law. *Roseta v. County of Washington,* 254 Or 161, 458 P2d 405 (1969). In *Sammons v. Sibarco Stations, Inc.,* supra, we held that "* * * the absence of findings precludes judicial review as to whether the findings are sufficient as a matter of law * * *." 10 Or App at 49. Therefore, because the planning commission in the instant case also failed to make written findings, we cannot, on the record before us, make a

determination whether the grant of the conditional use permit was proper.

■ Defendant argues that the minutes of the planning commission's public hearing, together with the report by the planning commission to the city council, both of which are included in the court file, are sufficient to constitute the necessary findings.

Defendant, in its brief, also requests that we take judicial notice of the City's "Comprehensive Plan." The plan was not introduced into evidence in the proceedings below. However, appended to defendant's brief is a typewritten document which purports to be a copy of defendant's "Comprehensive Plan." This document is dated "June 1968," and bears a handwritten notation "Adopted by Council 1971."

■ Statutory authority permitting the taking of judicial notice is set forth in ORS 41.410 and 16.510. We do not find any authority in these provisions or elsewhere permitting us to take judicial notice of defendant's plan under the circumstances presented here. *See also, Fasano v. Washington Co. Comm.,* supra, 264 Or at 588-89.

Turning to the minutes of the planning commission and the report of the commission to the city council, for the reasons set forth in *Sibarco* we cannot agree with defendant's contention that these minutes and the subsequent report are sufficient to constitute the necessary findings. *Cf., Erickson v. City of Portland,* 9 Or App 256, 496 P2d 726 (1972). Neither the minutes nor the report answers the following questions concerning the proposed conditional use:

(a) Does the proposed use come within one of the exceptions authorized in § 10.205 of the city zoning code, and if so, which exception?

(b) Does it conform to the comprehensive zoning plan? *See Frankland v. City of Lake Oswego,* 8 Or App 224, 493 P2d 163 (1972), *aff'd as modified and remanded,* 267 Or 452, 517 P2d 1042 (1973).

(c) Does it comply with the lot size requirement of § 10.210, assuming that this section is applicable?[①]

(d) Does it comply with the yard requirements of §§ 10.215 and/or 10.435, if applicable?

(e) Does it comply with the lot coverage requirements of § 10.220, if applicable?

(f) Does it comply with the height requirements of § 10.225, if applicable?

The report of the planning commission to the city council, while supplying some additional information as to the basis of the commission's decision, still would, in our opinion, be insufficient. *See generally,* 2 Yokley, Zoning Law and Practice 204, § 15-17 (3d ed 1965).

One final question remains and should be answered: Was it necessary for the city council to make its own findings on appeal?

■ Assuming that the planning commission in this case had followed proper procedures, and had made proper and adequate written findings prior to granting the permit, we are of the opinion that, in the absence of a statutory requirement, the city council could have adopted and approved the commission's findings and determination, and would not have been required to make its own separate findings on the appeal. *See,*

_____

[①] Section **10.435** provides in part:

"* * * A conditional use shall comply with the standards of the zone in which it is located except as these standards may have been modified in authorizing the conditional use or as otherwise provided * * *."

*Saporiti v. Zoning Board of Appeals,* 137 Conn 478, 482, 78 A2d 741 (1951).

Lastly, because of the absence of findings, we do not reach plaintiff's final assignment, namely, that the proposed use is not a permitted use under the ordinance.

Reversed and remanded for further proceedings not inconsistent with this opinion.

SCHWAB, C. J., specially concurring.

I agree that this case must be remanded for further proceedings. However, I take a different view of what those further proceedings should include.

This case presents only one significant issue: the extent to which the local zoning officials were required to comply with the procedural requirements of *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), in granting the conditional use permit here challenged. Those procedural requirements are:

> "* * * Parties at the hearing before the county governing body are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no prehearing or ex parte contacts concerning the question at issue—and to a record made and adequate findings executed * * *." 264 Or at 588.

The Astoria City Council deviated from these requirements in the following particulars.

1. The plaintiff and other interested parties were not afforded an opportunity to be heard by the city council, not because the council refused to hold a hearing,[1] but because the council did not give prior

---

[1] The minutes of the city council meeting of November 6, 1972, state that when the council began considering the CYDA conditional use permit: "Mayor Steinbock asked if there was anyone present who would like to speak for or against the appeal."

notice of the hearing. Prior notice that the CYDA conditional use permit would be considered by the council would be the essential first step in furnishing an opportunity to be heard. Such prior notice should have, at least, been given to plaintiff and the others who appealed the planning commission decision to the city council.[2]

■ The city council failed to be an impartial tribunal within the meaning of *Fasano,* i.e., the council did have ex parte contacts concerning the question at issue. The agenda for the council meeting at which the conditional use permit was considered states:

"We have submitted considerable material prepared by the Association [CYDA] at the request of the City Manager. This was done in order to give the Mayor and Council sufficient information as to the intentions of the group."

I cannot tell who "we" refers to in the above excerpt. I can tell from it that CYDA was allowed access to the city council that was more favorable than the access allowed those who opposed granting the conditional use permit.[3]

---

[2] I fail to appreciate the significance the majority attaches to the fact that the Astoria zoning ordinance does not require advance notice of city council consideration of a zoning appeal. This case presents questions involving compliance with the requirements of Fasano v. Washington Co. Comm., 264 Or 574, 507 P2d 23 (1973), not involving compliance with the zoning ordinance.

[3] It may be that *Fasano* was not intended to absolutely forbid all ex parte prehearing contacts, but rather, to assure that any material brought ex parte to the attention of decision-makers be again fully presented at an evidentiary hearing where it could be challenged or answered by interested parties. However, it is not possible to consider that issue here, because we have no record from which we can ascertain whether or not the CYDA material submitted ex parte was subsequently presented at the hearing in a form which gave other interested parties the right to respond to it.

■ The city council did not make a record or execute findings.

The above irregularities necessitate remanding this matter to the city council for further proceedings that comply with the procedural requirements of *Fasano* unless *Fasano* is not here applicable. There are three possible arguments for the proposition that *Fasano* is not applicable: (1) *Fasano* involved a zone change; this case involves a conditional use permit; (2) *Fasano* involved county zoning; this case involves city zoning; (3) *Fasano* should not be applied retroactively.

(1) The possibility that the zone-change-conditional-use-permit distinction makes *Fasano* inapplicable arises from *Archdiocese of Port. v. Co. of Wash.*, 254 Or 77, 458 P2d 682 (1969). In that case the Supreme Court held that there is a presumption of legislative validity when a local government grants or denies a conditional use permit and, therefore, judicial review is limited to the question of arbitrariness. In so doing, the Supreme Court distinguished variance decisions and zone change decisions as matters not entitled to a presumption of legislative validity. *See*, 254 Or at 83-85. However, as I read *Fasano*, the underlying rationale of *Archdiocese*—that passing on a request for a conditional use permit is a legislative act—has been rejected by the Supreme Court. Instead, *Fasano* articulates an entirely different analysis—whether the zoning decision affects a large class of individuals, and hence is legislative, or whether it affects a specific individual or individuals, and hence, is judicial. *See*, 264 Or at 579-81.

In the case at bar, whether CYDA is entitled to a conditional use permit entails the application of a

general rule (the Astoria zoning ordinance) to specific individuals and interests (CYDA and the property owners in the area of the proposed conditional use). It follows in my mind that the procedural requirements of *Fasano,* articulated in the context of a zone change, are equally applicable here in the context of a conditional use permit.

(2) *Fasano* referred to procedures to be followed before "the county governing body." 264 Or at 588. This case involves city zoning. Does this make the procedural requirements of *Fasano* inapplicable?

This depends, in my opinion, on whether the procedural rules of *Fasano* are based on statutes or on the constitution. If based on statutes, there might be different results in cities and counties because of different statutory language. If based on the constitution, there would not be different results; the constitution does not mean one thing in cities and another thing in counties.

Finding no possible statutory basis for the part of *Fasano* here relevant—opportunity to be heard, impartial tribunal, record and findings—I conclude it is based on due process considerations, albeit not clearly so articulated by the Supreme Court. Just after the enumeration of the required procedures the Supreme Court cited *Comment, Zoning Amendments—The Product of Judicial or Quasi-Judicial Action,* 33 Ohio St L J 130 (1972). That law review article clearly bases its analysis, apparently adopted by the Supreme Court, on constitutional grounds:

> "* * * The recognition that zoning amendments are the product of judicial or quasi-judicial action would mean that additional procedural requirements must be adhered to in the name of due process * * *." 33 Ohio St L J, supra at 140.

Assuming I am correct in reading *Fasano* as imposing constitutional procedural requirements, it follows that those requirements are equally applicable in cities and counties.⊕

(3) Although not raised by the parties, I find the question of whether *Fasano* should be applied retroactively to be troublesome. Here we have a case where the local officials completed action on a conditional use permit in November of 1972. As of that date, I think everything the local officials did was probably lawful under *Archdiocese*. Then in March of 1973, while this writ of review proceeding was pending in circuit court, *Fasano* was decided. On the one hand, this looks like a situation where a new rule is ordinarily applied to cases pending in the courts when the new rule is announced. *See, State v. Fair,* 263 Or 383, 502 P2d 1150 (1972). On the other hand, should we set aside a zoning decision made a year-and-a-half ago on the grounds that the rules of the game have changed since then? This is the closest of the three possible grounds for holding *Fasano* to be inapplicable. However, I am inclined to hold *Fasano* is retroactive because its procedural standards are designed to preserve the integrity of the decision-making process in zoning cases. *See, State v. Fair,* supra.

For the foregoing reasons I would hold: (1)

---

⊕ There are actually many holdings in Fasano v. Washington Co. Comm., supra. In Baker v. City of Milwaukie, 17 Or App 89, 520 P2d 479 (1974), we held that one of the holdings in *Fasano*—that zoning decisions had to be in accord with comprehensive plans—was not applicable to cities because it was based on statutes and different relevant statutes then governed cities and counties. *Baker* is not inconsistent with my view that another holding in *Fasano*—the procedural requirements—is applicable to both cities and counties because it is constitutional in nature.

*Fasano* is applicable; (2) the city council violated *Fasano*; and therefore (3) this case is remanded to the city council for further proceedings that comply with *Fasano*.

The majority opinion also remands this case, although the proceedings the majority requires following remand are not completely clear to me. I fear that local zoning officials will share my uncertainty about the basis of the majority opinion, and the confusion created by *Fasano* will be substantially compounded.

The majority opinion first requires reasonable advance notice of the city council hearing on the CYDA conditional use permit. It next provides that the city council need not hold a hearing on this matter provided that an "adequate record" is made of the planning commission proceedings. I am mystified by the majority's requirement that notice be given of a hearing that need not necessarily be held. Moreover, in this case there is no record of the planning commission proceedings. Does the majority contemplate that this matter will go back to the planning commission for a hearing to be "adequately recorded" or back to the city council for a de novo evidentiary hearing?

The majority's treatment of this case suggests that their ultimate concern is with avoiding the necessity of "two full-scale, de novo-type hearings," i.e., one before the planning commission and another before the city council. I note in passing that the facts of the *Fasano* case and many others indicate that it is fairly common for local governments to hold two evidentiary hearings—one before the planning commission and another before the local governing body.[5] I also note that

---

[5] This court's opinion in Fasano v. Co. Comm. of Wash. Co., 7 Or App 176, 489 P2d 693 (1971), states that "a public hearing

the city council in this case displayed no reluctance to holding a second public hearing. *See,* n 1, supra.

Nevertheless, I am likewise concerned about the possible inefficiency and expense that always having to hold two separate hearings could entail. However, unlike the majority, I believe this is required by *Fasano* under *the existing Astoria zoning ordinance.* I also believe that any zoning ordinance can be structured to limit interested parties to only one evidentiary hearing.

It all turns on the scope of review when there is an appeal from a lower tribunal to a higher one. The possibilities are: (1) fully de novo, meaning a new evidentiary hearing—this is what now happens, for example, when a minor criminal case is appealed from district court to circuit court; (2) de novo on the record, for example, as in workmen's compensation cases; and (3) review of the record limited to ascertaining whether findings of fact are supported by substantial evidence, as happens in our review of contested cases before state administrative agencies.

A local governing body could, by ordinance, delegate the responsibility to conduct evidentiary hearings on zoning matters to the planning commission or a hearing officer. A complete record, i.e., verbatim transcript, etc., would be made. Thereafter, any further review within the local government structure could be either de novo on the record or perhaps reviewing the record for substantial evidence. In short, as long as there is one evidentiary hearing that complies with *Fasano,* and a record made of that hearing,

---

was held by the [planning] commission" and on appeal the county commissioners also "hear[d] testimony and consider[ed] the evidence presented." 7 Or App at 177-78.

local governments will not be required to hold further evidentiary hearings, although they are free to choose to do so.

It is clear to me that the Astoria zoning ordinance does not work this way for the simple reason that it does not require that a record be made of hearings before the planning commission. In the absence of a record to review, the only possible thing for the city council to do, consistent with *Fasano,* is to hold another evidentiary hearing. If anomaly this be, it can be easily remedied by Astoria and all other local governments by changing the procedures under their zoning ordinances.