Argued March 21, reversed July 5, 1978

MOORE et al, *Appellants,*
*v.*
BOARD OF COMMISSIONERS OF CLACKAMAS
COUNTY et al, *Respondents.*
(No. 76-7-159, CA 9141)
580 P2d 583

Michael S. Sommers, Portland, argued the cause for
appellants. With him on the briefs was Day and
Prohaska, P.C., Portland.

Keith Kinsman, Assistant County Counsel, Oregon City, argued the cause for respondent Board of Commissioners. With him on the brief was Clackamas County Counsel, Oregon City.

Paul D. Schultz, Oregon City, argued the cause for respondent Western Evangelical Seminary. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This is a zoning appeal challenging the validity of a variance granted by defendant Board of Commissioners of Clackamas County (Board) in connection with the proposed construction of a gymnasium on the campus of defendant Western Evangelical Seminary (WES). Plaintiffs, who are adjacent property owners, appeal from the judgment of the circuit court affirming the decision of the Board. The variance would permit WES to construct the gymnasium with less than the number of off-street parking spaces required under the county zoning ordinance.

Plaintiffs assert the following errors:

(1) There was "no reliable, probative or substantial evidence" to support the variance under the zoning ordinance;

(2) The Board misconstrued its own ordinance; and

(3) WES failed to sustain its burden of proof under the ordinance.

The events which led up to the present case may be summarized as follows:

WES is an accredited graduate school of theology. Its campus, which is located in the Jennings Lodge area, is zoned R-10, single family residential. The campus is contained on a parcel of land approximately 3.75 acres consisting of a chapel building, a small classroom, an administrative building, a bookstore and counseling office. The present enrollment is 151 students. Its maximum projected enrollment is approximately 200 students.

Prior to the adoption of the present Clackamas County Zoning Ordinance in 1960, the only buildings on the WES property were a library, an administration building and a small residence.

The present Clackamas County Zoning Ordinance was adopted May 17, 1960. It contained the requirements for maintenance of off-street parking. In

January 1961, WES applied for a conditional use permit to expand the number of buildings on campus. This conditional use permit for expansion included an addition to the existing library and for the future construction of a chapel and a combination auditorium-gymnasium. The conditional use was granted in February 1961.

In 1966 WES applied for and received permission to build an administration building. The request was approved under the previous conditional use granted in 1961.

On August 12, 1974, WES applied for a building permit to construct a bookstore and counseling office. The bookstore and counseling office was to be called the Bauman Center.

The administration building and Bauman Center were built where the gymnasium was proposed in 1961.

On November 8, 1974, WES made application for a variance which would reduce the number of parking spaces in order to construct the proposed chapel. At that time the number of parking spaces required was 157. The Clackamas County Board of Adjustment allowed the variance and decreased the number of required spaces to 139.

The 1974 site plan by WES's architect made no reference to the combination auditorium-gymnasium. Where in 1961 the original site plan had a combination auditorium-gymnasium proposed, there now stands an administration building and Bauman Center.

In 1975 WES purchased tax lots 3300 and 3600, which were adjacent to the campus. In that same year WES applied for a conditional use permit to use those lots for parking facilities. A conditional use was subsequently denied.

WES sought the conditional use on these two tax lots, due to the fact that a proposed gymnasium would have eliminated the parking area.

After denial of the conditional use, WES applied for a variance in the parking requirements. WES asked to reduce from 139 to 93 the number of parking spaces required in order to build the gymnasium. The planning staff recommended a denial; on January 5, 1976, the Clackamas County Board of Adjustment also denied the variance.

WES appealed the denial. A hearing was held before the Board on February 23, 1976. On May 17, 1976, the Board granted WES its variance, but allowed a reduction of the number of parking spaces only to 113 instead of 93, as requested by WES.

Testimony for WES at the February 23, 1976, hearing was given by its architect and its attorney, respectively.

WES's attorney testified that WES is a graduate institution where many students are not enrolled full-time and many live in nearby housing; that due to this fact the gymnasium is not going to increase the need for more parking; that therefore the request for 93 parking spaces is equitable. The architect gave similar testimony.

All of plaintiffs' assignments relate to § 11.51 of the county zoning ordinance, which is set forth below.[1]

---

[1] Section 11.51 of the Clackamas County Zoning Ordinance reads as follows:

"Where difficulties exist rendering compliance with the Zoning Ordinance impractical and such compliance would create unnecessary hardship to the owner or user of land or buildings, the Board may grant a variance from the provisions of this ordinance after the prescribed hearing and after an investigation; provided all of the following conditions exist:

"A . . . . The difficulty would apply to the particular land or building regardless of the owner.

"B . . . . The request for a variance is not the result of an illegal act on the part of the applicant.

Plaintiffs argue as follows: that the granting or refusal of a variance is a quasi-judicial action and that WES must come within the terms of the ordinance; that mere conclusions written into findings are insufficient; that the "hardship" asserted by WES was self-created.

Defendants argue that the Board's findings and conclusions were supported by substantial evidence; that the Board correctly construed the ordinance; that WES satisfied each of the requirements of § 11.51 of the ordinance; and that plaintiffs' argument of self-created "hardship" was not raised in plaintiffs' petition for writ of review.

1. We conclude that the Board's order granting the challenged variance must be set aside because, contrary to decision of the circuit court, the findings and conclusions of the Board[2] were not supported by substantial evidence in the following particulars:

"C . . . . The plight of the owner is due to unique circumstances, such as lot size or shape, topography, and size or shapes of building, which are not typical of the general condition of the surrounding area.

"D . . . . The hardship asserted as a ground for a variance must arise out of the Zoning Ordinance.

"E . . . . The practical difficulty or unnecessary hardship asserted as a ground for a variance must relate to the premises for the benefit for which the variance is sought and not to other premises or personal conditions of the applicant.

"F . . . . The variance does not allow the property to be used for purposes not authorized within the district involved."

[2]The questioned findings are as follows:

"4. Strict compliance with the provisions of the Zoning Ordinance would create unnecessary hardship to the owner or user due to the unique circumstances. The gymnasium contemplated is not expected to result in a greatly increased need for parking. During hours of operation the seminary will continue to be used primarily by those already on the grounds so that little or no additional parking spaces are needed because of construction of the gymnasium. Because of the size and shape of the improvements and lot size and shape, the difficulties for which the variance is sought would arise regardless of the owner.

"* * * * *

"6. The practical difficulty and unnecessary hardship in complying with parking requirements relates strictly to the benefit for which the variance is sought and not to other premises or personal conditions of the applicant."

[ 44 ]

The variance does not meet all the preconditions of § 11.51 in that:

(1) There was no evidence that the "plight of the owner" was due to unique physical circumstances not typical of the surrounding area, such as the size and shape of the land or structure as required by paragraph (c) of the ordinance. Rather, the evidence showed only that it was due to a shortage of land; and

(2) There was no evidence that the "practical difficulty or unnecessary hardship" related to the premises as required by paragraph (e). Rather, the evidence showed that this was due to the "personal conditions of the applicant," namely, insufficient uncommitted land remaining on WES's campus to meet the parking requirements of its proposed new structure. *See, Erickson v. City of Portland,* 9 Or App 256, 496 P2d 726 (1972).

2. The "hardship" asserted by WES was self-created, inasmuch as the gymnasium is to be located where WES had previously allocated off-street parking spaces for its chapel. The result of this is that WES does not have (and the Board so found) sufficient land remaining to build its gymnasium and comply with the previously determined parking requirements for its chapel. Although this question has apparently not been decided in Oregon, a self-created hardship is usually not grounds for obtaining either an area variance or a use variance. *See,* 3 R. Anderson, American Law of Zoning 294, § 18.56 (2d ed 1968).

3. Lastly, defendant contends that plaintiffs' argument of self-created hardship was not raised in plaintiffs' petition for writ of review. We are satisfied that the allegations of paragraph XIII(7)[3] of plaintiffs' amended petition were sufficient to permit plaintiffs

_____
[3]Paragraph XIII(7) of plaintiffs' amended petition alleges:

"There was no evidence or finding the difficulty asserted related to the premises for the benefit for which the variance is sought and not personal conditions of the applicant."

to urge this contention both below and on appeal. This contention was a part of plaintiffs' challenge to the granting of this variance from the beginning.

Reversed.