Argued March 28, affirmed in part; reversed in part and remanded June 6, reconsideration denied July 13, petition for review denied October 25, 1977

BIENZ, *Appellant,*
*v.*
CITY OF DAYTON et al, *Respondents.*
(No. 32446, CA 6737)

566 P2d 904

[ 762-a ]

[ 762-b ]

[ 762-c ]

[ 762-d ]

Herbert H. Anderson, Portland, argued the cause for appellant. With him on the briefs were Harold C. Pope and Dezendorf, Spears, Lubersky & Campbell, Portland.

No appearance for respondent City of Dayton, an Oregon municipal corporation, Paul Jellum, its Mayor, Paul Jensen, Norman McGrew, Morris Thacker, Duane Barnes, John Pacheco, and Rex McElwain, the City Council Members, the Building Inspector, City Recorder, and Howard Williams, the City Engineer.

Eugene C. Tish, Portland, argued the cause for respondent J. Gregcin, Inc., a corporation. With him on the brief were C. David Hall and Rask & Herrerin, Portland.

Before Schwab, Chief Judge, and Lee and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

Petitioner appeals a judgment dismissing his petition for a writ of review of decisions of the respondent city approving a tentative plan for a proposed subdivision and a subsequent modification to the approved tentative plan.

Petitioner makes six assignments of error: (1) the trial court's grant of a motion to strike portions of the petition; (2) the trial court's denial of petitioner's objections to the return to the writ; (3) the city's alleged failure to comply with its own ordinance and state statutes requiring coordination with affected governmental agencies; (4) the city's alleged failure to follow proper procedures in granting variances; (5) violation of due process because of the absence of a verbatim record of the evidentiary hearing; and (6) the trial court's refusal to review a subsequent decision modifying the tentative plan. We affirm the trial court's decision as to the city's approval of the tentative plan, but reverse for further proceedings with respect to the modification.

The events leading and subsequent to the respondent city's decision approving the tentative plan are as follows:

On December 13, 1974 defendant J. Gregcin, Inc., the developer, applied to the city of Dayton for approval of a 52 unit residential subdivision. The tentative plan was approved by the city council in January 1975. Building permits were subsequently granted for ten units which were then constructed. On November 10, 1975 the Yamhill County Circuit Court issued a writ of mandamus ordering the city to vacate the approval of the subdivision and cancel the building permits. The grounds for the writ was that the city's subdivision ordinance did not comply with ORS 92.010 to 92.160 governing standards and procedures for approving subdivisions.

On November 20, 1975 the city enacted a new

subdivision ordinance and on November 24, 1975 the developer resubmitted its application for approval of the tentative plan. The city planning commission held an evidentiary hearing on the renewed application on December 29, 1975. On January 5, 1976 the developer petitioned for variances from the city subdivision ordinance and the planning commission met and approved on that date both the tentative plan and the variances. Petitioner then appealed to the city council. The council then requested the planning commission prepare written findings. The planning commission held another meeting on February 5, 1976 "to reconsider the meeting of January 5, 1976," reaffirmed its earlier approval of the tentative plan and variances and prepared written findings.

On February 9, the city council heard oral argument, considered the appeal de novo on the record, and affirmed the planning commission. On March 8, 1976 the city approved a modification of the tentative plan changing the placement of the water lines.

Application of Fasano and Finality of the Tentative Plan

■■ There are two questions which require resolution before proceeding to a discussion of petitioner's assignments of error. (1) Are the due process standards announced in *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973) applicable to a city's administration of a subdivision ordinance. (2) Is the approval of a tentative plan under a subdivision ordinance a final order reviewable in a writ of review proceeding. Both questions must be answered in the affirmative.

■ The parties assume *Fasano* applies, but we can find no precedent. *Fasano* was a zone change case and the decisions following *Fasano* apply either to the administration of comprehensive plans or zoning laws. A major partition subdivision such as we have here is a division of a tract of land into four or more lots and

includes the creation of roads and streets.[1] However, applicability of *Fasano* is not determined by labels, but by substance. The determinative criteria is whether the approval of a tentative subdivision plan is a land use decision and is judicial in nature. *Fasano v. Washington Co. Comm., supra; Auckland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 536 P2d 444 (1975).

■ It is evident that most applications for subdivision contemplate a significant change in land use, often of greater magnitude than contemplated in a zone change proceeding. In the present case the tentative plan contemplates in a city of 1,215 population to convert several acres of undeveloped land into a 52 lot residential area housing 224 people. Subdivision laws are similar in purpose to zoning as an exercise of police power to assure orderly land use. Significantly, here the city has adopted a comprehensive land use plan, but has not yet enacted zoning ordinances. Presum-

---

[1]ORS 92.010 provides:

"As used in ORS 92.025 to 92.160, unless the context requires otherwise:

"* * * * *

"(2) 'Major partition' means a partition which includes the creation of a road or street.

"* * * * *

"(4) 'Minor partition' means a partition that is subject to approval by a city or county under a regulation or ordinance adopted pursuant to ORS 92.046 and that does not include the creation of a road or street.

"* * * * *

"(6) 'Partition' means either an act of partitioning land or an area or tract of land partitioned as defined in this section.

"(7) 'Partitioned land' means to divide an area or tract of land into two or three parcels within a calendar year when such area or tract of land exists as a unit or contiguous units of land under single ownership at the beginning of such year. * * *

"* * * * *

"(10) 'Subdivide land' means to divide an area or tract of land into four or more lots within a calendar year when such area or tract of land exists as a unit or contiguous units of land under a single ownership at the beginning of such year.

"(11) 'Subdivision' means either an act of subdividing land or an area or a tract of land subdivided as defined in this section."

We do not reach the question whether *Fasano* applies to partitions other than those which are both a "major partition" and a "subdivision."

ably, the city places a higher priority on subdivision control than zoning as a device for insuring implementation of the comprehensive plan. The city subdivision ordinance, following the mandate of ORS 92.044, states as its purpose:

"* * * to assure adequate width and arrangement of streets, to coordinate proposed development with plans for utilities and other public facilities, to avoid undue congestion of population, to assure adequate sanitation and water supply, to provide for the protection, conservation, and proper use of land, for securing safety from fire, flood, slides, pollution, drainage or other dangers, for providing adequate light and air, recreation, education, adequate transportation, and to protect in other ways the public health, safety and welfare."

■ It is likewise clear that the legislature considered subdivision approval an integral part of land use planning and control. ORS 92.010 to 92.160 are a comprehensive legislative scheme regulating subdivisions and prescribing requirements that local government must follow in adopting subdivision ordinances and approving or disapproving specific subdivisions. ORS 92.044(6) requires that local subdivision ordinances and decisions thereunder must comply with the city's comprehensive plan. In addition, ORS 197.250 provides that:

"All *comprehensive plans* and *any zoning, subdivision* and *other ordinances* and regulations adopted by a state agency, city, county or special district to carry out such plans shall be in conformity with the state-wide planning goals within one year from the date such goals are approved by the commission." (Emphasis supplied.)

Further, if a city or county subdivision ordinance fails to comply with statewide planning goals, the Land Conservation and Development Commission shall prescribe and may administer "comprehensive plans and zoning, subdivision or other ordinances * * *." ORS 197.325(1).

■ City approval of a subdivision is not only a land use decision, but is judicial in nature in that it "affect[s]

[ 766 ]

specific individuals and involve[s] application of general rules to individual interests." *Auckland v. Bd. of Comm. Mult. Co., supra* at 601. The persons who are directly affected usually are the individual subdivider and the adjoining landowners.

■ The statutes and city ordinance contemplate a two-step process before a subdivision is ultimately approved or disapproved. First the subdivider submits to the city planning commission a tentative plan for the proposed subdivision. The tentative plan need not be a finished drawing, but merely a preliminary sketch showing the general design of the proposed subdivision. ORS 92.040; Ord. §§ 6-15.[2] However, a city cannot approve a tentative plan if the proposed subdivision does not comply with certain requirements concerning lot sizes, streets and roads, utilities, recreation areas and other improvements, and conform to the comprehensive plan and applicable zone laws. ORS 92.090; Ord. §§ 28-38. Likewise the city must coordinate its approval of the tentative plan with other affected governmental agencies. ORS 92.044(1)(c). If the tentative plan is approved, the subdivider may then submit a final plat which is reviewed by the city engineer. ORS 92.050 to 92.100; Ord. §§ 16-22. If approved by the city engineer, it is certified to the planning commission and then can be recorded. Ord. § 22. In spite of this two-step process, the land use decisions to which *Fasano* apply are made at the time of the approval or disapproval of the tentative plan, and such decisions constitute final decisions reviewable by writ of review.

■ Any actions by the city of a land use nature taken after approval of the tentative plan preparatory to filing the final plat are ministerial. Arguably, since approval of the final plat is essentially a ministerial act, we should await this final act before allowing judicial review. This would be analogous to a trial

---

[2]This and all subsequent references to "Ord." refer to City of Dayton Ordinance No. 334 (1975).

court which renders a decision from the bench but the decision is not appealable until a final order is entered. The analogy is not tenable because the actions taken subsequent to approval of a tentative plan are not merely a final formality in a single process. These subsequent actions are of a substantially significant nature and are a part of an ancillary process. The land use decision is made at the time of the approval or disapproval of the tentative plan. The actions following approval are to implement the tentative plan. Before the subdivider can submit a final plat, he must prepare a detailed survey, obtain certain permits concerning water and sewage, comply with any conditions imposed by the city in its approval of the tentative plan and pay certain fees. ORS 92.050 to 92.160; Ord. §§ 16-22. The subdivider is not required to submit the final plat for 12 months following approval of the tentative plan. Ord. § 16. The city engineer must not only review the final plat, but make an on-sight inspection to ensure that it complies with the tentative plan approval. ORS 92.100; Ord. § 19. More significant, approval of the tentative plan is binding on the city under ORS 92.040 and there is nothing in ORS 92.010 to 92.160 which would prevent the subdivider from then proceeding with construction. The filing and recording of the final plat is only necessary to enable the subdivider to sell the property. ORS 92.016. Indeed the city ordinance expressly contemplates that after approval of the tentative plan, the subdivider may proceed with the construction of the streets and other improvements or he may file the final plat subject to an agreement and bond to perform the required work. Ord. § 20. The decision to approve or disapprove a tentative plan is "a final order * * * which determines the rights of the parties so that no further questions can arise before the court rendering it, except such as are necessary to be determined in carrying it into effect * * *." *Winters et al v. Grimes et al,* 124 Or 214, 216, 264 P 359 (1928).

A corollary question is when did the approval occur. The question casts some doubt on the validity of our

conclusion that approval of a tentative plan is a final order. On February 9, 1976 the city council affirmed the planning commission's decision approving the tentative plan. On March 8, 1976 the city modified the tentative plan changing the placement of water lines. Petitioner argues that the February 9 decision was the final order and the city was bound by its approval under ORS 92.040 and could not make any changes except those necessary to comply with the approved tentative plan. We agree that the February 9, 1976 decision was a final order. We do not agree with petitioner's contention that the city's approval of a tentative plan is binding to the degree that it cannot be modified under any circumstances.

ORS 92.040 provides that approval "shall be binding upon the city or county for the purpose of the preparation of the plat or map * * *." The apparent intent of this provision is to enable the subdivider to proceed with his project, including not only the preparatory steps to filing a final plat, but actual construction, with the assurance the city cannot later change its mind. However, no purpose is served by prohibiting subsequent modifications with the subdivider's consent. There is nothing in ORS 92.010 to 92.160 or the city ordinance which prohibits a subdivider from abandoning the project after approval of the tentative plan or revising the tentative plan and re-applying for city approval. Correspondingly, the city may allow a subdivider to seek modification after approval of the tentative plan. The modification must be treated procedurally the same as an initial application and approval of a tentative plan and cannot be used as a device to evade the requirements of *Fasano*. If the modification has any substantial impact on land use, then the city must give public notice and afford affected persons an opportunity to be heard.

Of course, if the subdivider and the city jointly can continually modify the approved tentative plan, this certainly mitigates against the finality of the approv-

al. The possibility of subsequent modification is a common pitfall inherent in judicial review of many administrative decisions whether under the Administrative Procedures Act, ORS ch 183, or a writ of review. The administrative process necessarily must retain a degree of flexibility. The question is not whether the decision is absolutely final, but whether there is sufficient finality to be appropriate for judicial review. Even court decisions are not totally final. A judgment may be vacated. ORS 18.060. In equity courts often continually modify decrees. We treat the March 8 decision approving the modification of the tentative plan the same way we would treat a modification of a decree in equity. The modification is a separate order and must be reviewed on its own merits. It cannot be used as a means of collaterally attacking the initial approval of the tentative plan any more than a motion to modify can be used to collaterally attack a decree.

### Assignments 1, 2 and 6—The Pleadings

Many of the issues on appeal have been unnecessarily obfuscated by petitioner's bad pleading and erroneous rulings. ORS 34.030 prescribes that the petition shall describe the decision or determination being challenged "with convenient certainty, and setting forth the error alleged to have been committed therein." The petition here is 14 pages in length containing 29 paragraphs, most of which are evidentiary, repetitious or irrelevant. Respondent first filed a motion to quash and then, apparently upon the urging of the trial court, filed a motion to strike which was allowed. Petitioner contends that a motion to strike is not permissible in a writ of review proceeding, relying on cases holding that the only appearance by a respondent permitted in such proceeding is a motion to quash or a return to the writ. *Roethler v. Cummings,* 84 Or 442, 446, 165 P 355 (1917); *McCabe-Duprey Tanning Co. v. Eubanks,* 57 Or 44, 102 P 795, 110 P 395 (1910); *Duddles v. City Council of West Linn,* 21 Or App 310, 535 P2d 583, Sup Ct *review denied* (1975).

The enabling statutes for a writ of review, ORS 34.010 to 34.100, do not contain a great deal of specificity concerning procedures. ORS 1.160 provides:

"When jurisdiction is, by the Constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes."

We are reluctant to engraft code pleading practice into a proceeding for a writ, but it is appropriate for a court to strike sham, frivolous, irrelevant or redundant matter from a petition. The practical solution presented by this petition would have been to quash the entire petition with leave to petitioner to file a new petition in accordance with the statute. Instead the trial court granted respondents' motion to strike portions of the complaint, including the allegations of error. Whatever the defect in the trial court's order striking portions of the complaint, the error was partially cured by the subsequent proceedings. Respondents' return to the writ contained the record of the proceedings before the planning commission and the city council leading to the February 9 decision approving the tentative plan.

Petitioner then filed objections to the writ and assigned as error the overruling by the trial court. One objection was to the failure of the city to return the minutes of the March 8 meeting approving the modification to the previously approved tentative plan. The trial court overruled the objection on the ground that the modification was beyond the scope of this review. We have already stated that the March 8 modification was a separate proceeding from the decision of February 9 approving the tentative plan. Petitioner was in effect seeking two separate writs of review. Nonetheless petitioner should have been allowed to join the two writs in the same proceeding since they both arise

out of the same transaction. Courts have been liberal in engrafting other procedural statutes into writ of review proceedings. *See Duddles v. City Council of West Linn, supra* (motion to join as party); *Holland-Washington Co. v. County Court,* 95 Or 668, 188 P 199 (1920) (motion to extend time for return to writ and service of copy of writ); *N.W. Env. Def. Center v. City Council,* 20 Or App 234, 531 P2d 284, Sup Ct *review denied* (1975) (motion to extend time for return to writ); *Meury v. Jarrell,* 16 Or App 239, 517 P2d 1221, *aff'd* 269 Or 606, 525 P2d 1286 (1974) (motion to amend petition). ORS 16.220 permits joinder of two causes of action or suits in equity if they arise out of the same transaction.

■■ Petitioner alleges that the tentative plan approved on February 9, 1976 provided for the installation of water lines on one side of a street, and on March 8, 1976 the city council met without public notice or hearing and agreed to the developer's request to place the water lines on the other side. The modification allegedly was to punish petitioner for contesting the proposed subdivision and resulted in the destruction of eight large trees in front of petitioner's property. The placement, installation and dedication of water lines are a required part of the tentative plan. Conceivably relocation of a water line as contemplated by the modification may have a de minimis impact on land use and thus not constitute a land use decision subject to *Fasano.* We are not prepared without a review of the record to reach such a conclusion, particularly in view of petitioner's allegations concerning the resulting damage to trees and the motive for the modification. Without a record and some determination as to the nature of the modification, there was no basis for the trial court to conclude that it was beyond the scope of review.

■ Respondent argues that the modification was beyond the scope of review because it was a proprietary act of the city. Presumably the installation of water lines and the destruction of trees occurred on the

city's right-of-way, although there was nothing in the record to confirm this. In any event, we do not consider the city's proprietary interest relevant. Providing adequate water and placement, installation and dedication of water lines are initially the responsibility of the subdivider and are an integral part of the tentative plan. The fact that placement and installation may occur on city property or property eventually to be dedicated to the city does not mean that such placement and installation is not part and parcel of the land use decision involving the approval or disapproval of a tentative plan.

On remand, the trial court should require a return to the writ as to the record relating to the March 8, 1976 modification and then make a determination whether the modification was in fact a land use decision. If it was a land use decision and there was no notice or hearing as required by *Fasano,* then the modification should be vacated with leave to the city to undertake further proceedings.[3]

Petitioner's other objections to the return related primarily to the omission of the record of the 1975 proceedings that were invalidated by a previous order of the circuit court. The issue before the trial court was the validity of the decision approving the developer's tentative plan submitted on November 24, 1975. In particular, did the city comply with its subsequently enacted subdivision ordinance, follow proper procedures and render a decision supported by substantial evidence? ORS 34.040. Petitioner argues that the earlier proceedings are relevant as evidence of the motive for the February 9 decision approving the tentative plan. A writ of review proceeding is limited to the record made in the tribunal below. While there are instances where it may be appropriate for the trial court to hear evidence concerning standing or pro-

_____
[3]Even if the modification was a land use decision, the ultimate result may be that petitioner has no practical remedy. Petitioner did not seek a stay under ORS 34.070 and it appears from petitioner's allegations that the water lines have been installed pursuant to the modification.

cedural errors, as discussed infra, the trial court is not to retry the substantive issues de novo. *Lechleidner v. Carson*, 156 Or 636, 68 P2d 482 (1937); *Duddles v. City Council of West Linn*, 21 Or App at 328. These objections were properly overruled.[4]

### Assignment 3—Alleged Failure of City to Coordinate with Government Agencies

The city subdivision ordinance and state statute require "coordination * * * of the tentative plan * * * with all affected city, county, state and federal agencies and all affected special districts." ORS 92.044(1)(c); Ord. § 14. The city adequately complied by actively seeking and considering comments and recommendations from various affected state and local agencies. Most of the recommendations were incorporated in the conditions to the approval of the subdivision. "Coordination" does not require that the city accede to every criticism or recommendation of another governmental agency.

The Dayton Planning Advisory Committee, a citizen advisory committee to the planning commission created pursuant to ORS 215.046,[5] advised the city by letter dated December 24, 1975 that it considered the tentative plan inconsistent with the county comprehensive plan and requested a private meeting with

---

[4]Petitioner also objected to non-return of a February 2, 1976 letter to the mayor and city council from a city resident who had appeared at the planning commission's December 29 hearing. The letter was made part of the record in this proceeding. It is merely a repetition of the citizen's testimony at the hearing. If the city erred in not returning the letter, the error was not prejudicial. Petitioner's objection to the failure of the city to return the record regarding the March 8 decision allowing a modification was proper since the allegation concerning that decision was properly stricken.

[5]ORS 215.046 provides:

"(1) For the purpose of obtaining citizen participation in, and to assist in coordinating, land use planning for all lands situated within the county, the governing body of each county may establish advisory committees on land use planning for each area in the county composed of a city located principally within the county and such lands surrounding the city and located outside the boundaries of the city as

the city council. The request was denied. Petitioner contends that the refusal to meet privately constituted a failure to coordinate as required by the ordinance and statute. The record indicates that the planning commission in writing sought the planning advisory committee's views, that the committee had notice of the December 29 hearing and made an appearance stating its views. The committee's function is to advise. The decision-making responsibility is vested with the planning commission and the city council. The planning advisory committee's advice was considered by the city and thus the requirement of coordination was satisfied.

## Assignment 4—The Variances

The tentative plan was filed on November 24, 1975. At the December 29, 1975 city planning commission meeting, it was pointed out that the tentative plan did not comply with the subdivision ordinances. The developer stated he would apply for variances and made formal application on January 5, 1976. The variances were approved by the planning commission at the meeting on that date and also at the February 5, 1976 meeting. The commission's approval was affirmed at the February 9 meeting of the city council.

 Petitioner contends that the city followed improper procedures because the application for variances was not contemporaneously filed with the plan. The city's subdivision ordinance allows for a variance procedure similar to the variance procedures utilized in most

the governing body determines to be a reasonable land use planning unit. Each such committee shall be composed of residents of the area to be represented.

"(2) The governing body of a county and the planning commission for such county shall consult with each advisory committee established under subsection (1) of this section in the preparation, adoption, revision and implementation of a comprehensive plan for the county. The county shall furnish each such committee with technical and other assistance."

municipal zoning laws. 3 R. Anderson, American Law of Zoning 2nd, § 18. Ord. § 41 provides:

> "*Variance Application.* When necessary, the planning commission may authorize conditional variances to the requirements of this ordinance. Application for a variance shall be made by petition of the subdivider, stating fully the grounds for the application. *The petition shall be filed with the tentative plan for the subdivision.*
>
> Before a variance may be granted, the planning commission shall first determine:
>
> "(1) That there are special conditions affecting the property that are not common to all property in the area.
>
> "(2) That the variance is necessary for the preservation and enjoyment of a substantial property right of the petitioner and extraordinary hardship would result from strict compliance with these regulations because of the special circumstances or conditions affecting the property.
>
> "(3) That the variance complies with the spirit and intent of these regulations and will not be detrimental to the public health, safety, or welfare or injurious to other property in the vicinity." (Emphasis supplied.)

Respondent contends that the italicized language does not mean a contemporaneous filing but only requires that the petition for variances be filed physically in the same place as the tentative plan. Respondent reasons that the subdivision plan is tentative, and only after it has been reviewed can it be determined whether variances are necessary.

In administrative law we have generally held that it is the responsibility of the agency entrusted with the administration of a statute, rather than the courts, to fill the statutory interstices. *Fairview Hospital v. Moore,* 28 Or App 637, 560 P2d 671 (1977); *Sutherlin Ed. Assn v. Sch. Dist.,* 25 Or App 85, 548 P2d 204 (1976); *Springfield Ed. Assn v. Sch. Dist.,* 24 Or App 751, 547 P2d 647, 25 Or App 407, 549 P2d 1141, Sup Ct *review denied* (1976). The same rule should apply in construing municipal ordinances. The city council is not only charged with administering the ordinance, but is the legislative authority from which the ordi-

[ 776 ]

nance originates and thus is in a superior position to discern legislative intent. Here, we have an ambiguity in the ordinance. We defer to the city's resolution of that ambiguity where as here the city's construction is not contrary to the express terms of the ordinance.

■ Petitioner next contends that the findings by the planning commission concerning the variances were inadequate. The variances requested were for roadways of lesser width than required by ordinance, smaller radii of cul-de-sacs, deviation from a right angle intersection requirement, no sidewalks, and a lesser radius on one curve. The developer recited as reasons for the application the fact that streets, utilities, and ten houses were already constructed. The planning commission's findings adopted at the February 5 meeting and adopted by the city council recite:

"* * * * *

"The City Planning Commission considered Ordinance 334, Sec. 41, which made specific findings as to sub-paragraphs 1, 2, and 3, and granted variances on the following basis:

"1. Special circumstance, location, and exit of property, access on Church Street.

"2. Existing development and utilities already in.

"3. Would not be detrimental or injurious to other people in the area and complies and meets with spirit and intent of sub-division ordinance.

"* * * * *"

The minutes of the planning commission which are incorporated into the findings provide some amplification:

"Discussion was held on items 2 (C, D & E) of Mr. Draggoo's letter on the deviation of street width, cult-de-sac [sic] radii, and the elimination of sidewalks in exhibit "A". It was the commission's opinion that since the present streets are completed and that they are but a few feet short of the minimum width required, and that we have eliminated parking on one side of these streets that the commission would allow a variance on this. On the matter of sidewalks it was felt that since there is no sidewalks immediately outside of the sub-division and

that side walks would be difficult to put in because all lots are graded down 3½' to the curb and that sidewalks would cover existing utilities—the curve on Church didn't appear to present a bad problem so a variance also allowed on these 2 items."

The findings read in conjunction with the planning commission minutes explain the facts and criteria relied on and the reasons for the decision. *Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976); *Desler v. Lane County Commissioners,* 27 Or App 709, 557 P2d 52 (1976).

■ ■ Like most municipal variance laws, the applicant must make a showing of hardship to qualify for a variance. The Dayton subdivision ordinance requires "extraordinary hardship." Ord. § 14. Self imposed hardship generally will not qualify. 3 R. Anderson, American Law of Zoning 2nd, § 1846. Petitioner argues that the pre-existing construction was a self-imposed hardship. The record indicates that the developer undertook the construction in good faith reliance on the prior approval of the subdivision plan and issuance of building permits. The subsequent invalidation by the circuit court of the city's subdivision ordinance and the action approving the subdivision was the fault of the city, not the developer.

■ Petitioner also contends that the granting of the variances was illegal because there was allegedly neither notice nor a public hearing. Respondent first argues that notice and hearing are not required because at issue are "area" rather than "use" variances. The city ordinance quoted above is materially typical of variance ordinances found in municipalities throughout the United States and makes no distinction between types of variances. Nevertheless, courts in many jurisdictions have judicially recognized a distinction between "use" and "area" variances. If the application is for an area variance, courts have imposed less strict procedural requirements and a lesser showing of hardship. 3 R. Anderson, American Law of Zoning 2nd § 18.46 (1968).

A use variance is defined as authorizing use of land which otherwise is proscribed by zoning regulations. 3 R. Anderson, American Law of Zoning 2nd § 18.06 (1968). An area variance authorizes deviations from restrictions upon the construction and placement of buildings and structures which are employed to serve the permitted statutory use. 3 R. Anderson, American Law of Zoning 2nd § 18.07 (1968). A variance from a subdivision ordinance would by its nature be an area variance.

The rationale for the distinction—that an area variance does not pose a substantial threat to adjacent property owners—does not withstand analysis. An area variance which permits a 50-story office building in a city which restricts office buildings to 10 stories would have a substantial impact on adjoining landowners and the public. In the present case applicant seeks variances concerning the construction of streets which may have a substantial public impact in terms of such things as traffic and transportation. The distinction between area and use variances has not been judicially recognized in Oregon.[6] There is nothing in the ordinance at issue which suggests such a distinction. In the absence of statutory authorization, we are reluctant to adopt such a distinction.

Any variance by definition is a use of property which is otherwise expressly prohibited by law. In

---

[6]The only Oregon case in which we find mention of the distinction between "use" and "area" variances is *Hill v. Marion Co. Bd. of Comm.,* 12 Or App 242, 506 P2d 519 (1973), which invalidated a county's action approving a variance. In the opinion we stated as dictum:

"The effect of the variance granted in this case is to allow a use in an RA zone that would otherwise not be permitted. * * * As such the type of variance granted in the case at bar is classified as a 'use' variance as distinguished from an 'area' variance which would not allow an otherwise prohibited use in the zone. *Cf* 2 Rathkopf, Zoning and Planning 45-16 through 45-29 (3d ed 1966); 2 Anderson, American Law of Zoning 605, 610, §§ 14.09, 14.10 (1968); 2 Yokley, Zoning Law and Practice 161, § 15-9 (3d ed 1965)." 12 Or App at 247.

There is also an inference in the opinion that the presumption of regularity may be applicable to granting of an area variance but not to a use variance.

*Auckland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 601, 536 P2d 444, Sup Ct *review denied* (1975), we stated:

"* * * Whenever one seeks to use property in a manner that is not an outright permitted use, and must therefore obtain governmental approval, the necessary governmental proceedings are quasi-judicial in nature within the meaning of *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973). This is true whether the other-than-permitted-use is sought by way of a zone change, comprehensive-plan change, conditional use permit, variance, or as in this case, 'a reclassification.' The labels are not controlling. Instead, *Fasano* is applicable when land-use decisions affect specific individuals and involve application of general rules to individual interests."

But a more plausible interpretation of the opinion is that the presumption has no practical application in either case. The court stated:

"The defendants have argued that the decision to grant the variance is entitled to the 'presumption of regularity.' [Citing cases.] In the case at bar the grant of the variance acts to permit a use in an RA zone that is neither authorized nor contemplated by the zoning ordinance. The 'presumption of regularity' does not apply in this situation. [Citing case.]

"We note that there is an apparent discrepancy between the conclusion we reach here and the language of *Erickson v. City of Portland,* supra, [9 Or App 256, 496 P2d 726 (1972)] which stated that the presumption of regularity applies to the grant of a variance. *This discrepancy is more apparent than real,* and is explained by the distinction between a 'use' variance and an 'area' variance discussed above. *Erickson* involved an 'area' variance." 12 Or App at 249-50. (Emphasis supplied.)

The case referred to in *Hill, Erickson v. City of Portland,* 9 Or App 256, 496 P2d 726 (1972), involved a city's approval of a variance to sell a portion of property in a residencial area which would have a 45-foot frontage and 4,500 square feet whereas the code required a 50-foot frontage and 5,000 square feet. The only reason given for the variance was the owner's age and hardship to him in maintaining the yard. In that opinion we made no reference to the fact that the application was for an area variance. In dictum we acknowledge that the city's action was entitled to a presumption of regularity, but reversed, stating:

"The granting of the variance in this case which rests on the physical location of an existing structure and the age of the owner, without evidence of unique, unusual or peculiar circumstances, is invalid as a matter of law." 9 Or App at 262-63.

Under *Fasano,* affected persons are entitled to notice and an opportunity to be heard. 264 Or at 588.[7]

■ Respondent alternatively argues that there was notice by virtue of the fact that at the December 29, 1975 meeting of the planning commission, the developer informed the audience, including petitioner, that it would submit a petition for variance at the January 5, 1976 meeting. This did not constitute sufficient notice. The December 29 meeting was for the purpose of reviewing the subdivision plan. The city assumes that the persons attending that meeting were the only persons who may have an interest in the variance. We reject such assumption.

■ However, neither party suggests that there was not notice and an opportunity to be heard at the meeting held on February 5, 1976. That meeting occurred after petitioner gave notice of his appeal to the city council. The council requested that before hearing the appeal that the planning commission meet again and prepare findings. It is apparent that the purpose of this February 5 proceeding was in order to correct the procedural defects of the January 5 meeting. The minutes state:

"Mr. Brand [the city attorney] explained the purpose of this special meeting which was directed by the City Council to reconsider the meeting of January 5, 1976. He explained the necessity of reviewing the record to pre-

-----

[7]While we reject any judicial distinction between use and area variances in determining the application of due process standards under *Fasano,* this does not necessarily preclude the possibility of a city by ordinance applying lesser procedures for certain classes of variances provided the classification is rational. The traditional justification for permitting variances is to protect individual landowners against deprivation of the beneficial use of their property because of the operation of general statutes or ordinances. 3 R. Anderson, American Law of Zoning 2d § 18.02 (1968). In many instances the requested variances are minor in nature and do not substantially affect adjacent landowners. In such cases notice to adjoining landowners and the opportunity to be heard may not be necessary and may be an unduly cumbersome procedure for the applicant. However, a distinction based solely upon the concept of "area" versus "use" variance is not rational because the impact on others under either type can be substantial.

vent holding a full hearing again. He quoted both the Fasano Decision and the LCDC Guidelines."

The record further indicates:

"A special meeting of the Dayton Planning Commission was called for February 5, 1976. Notices were published as required by law."

In the absence of any contention tó the contrary, we assume that all interested persons received notice and were afforded an opportunity to be heard.

Assignment 5—Sufficiency of the Record

Petitioner argues that due process requires a verbatim record to have been made and, alternatively, that in the absence of a verbatim record the hearing before the city council on appeal should have been de novo.

Both the statutes and the city ordinance are silent concerning many of the procedural requirements applicable to land use decisions made by city planning commissions and city councils. However, it can be inferred from the statutes that the legislature does not deem a verbatim record is necessary. ORS 227.160 to 227.180 enables cities to employ hearings officers in land use decisions. ORS 227.180(1) provides:

"A party aggrieved by the action of a hearings officer may appeal the action to the planning commission or council for the city, or both, however the council prescribes. The appellate authority on its own motion may review the action. The procedure for such an appeal or review shall be prescribed by the council, but shall include a hearing at least for argument. Upon appeal or review the appellate authority shall consider the record of the hearings officer's action. *That record need not set forth evidence verbatim.*" (Emphasis supplied.)

It would seem that if a verbatim record is not required in an evidentiary hearing before a hearings officer, the same standard should apply to a hearing before the planning commission.

The question remains whether due process requires more. This issue was previously presented to this court

[ 782 ]

in *West v. City of Astoria,* 18 Or App 212, 524 P2d 1216 (1974). An evidentiary hearing was held on an application for a conditional use permit. The only record was minutes. The city council reviewed the record de novo. We stated:

> "* * * [W]e do not read *Fasano* as requiring that plaintiff be afforded two full-scale, de novo-type evidentiary hearings on his objections to the granting of the conditional use permit involved here. * * *
>
> "* * * * * *
>
> "We conclude that under the City's zoning ordinance one full-scale evidentiary public hearing before the planning commission is all that is required to provide plaintiff with due process of law, and that the city council is not required to conduct a second de novo evidentiary public hearing, provided, however, that an adequate record of the original hearing before the planning commission is made, and that proper and adequate findings, which are discussed later in this opinion, are made prior to official action on the permit application. *Regan v. Council of City of San Mateo,* 42 Cal App 2d 801, 110 P2d 95 (1941)." 18 Or App at 221-22.

The statement, however, is dictum because we went on to conclude that the record was inadequate because the planning commission did not submit findings. The inference to be drawn from the opinion is that if adequate findings had been submitted, minutes in lieu of a verbatim record would have been sufficient.

The thrust of *Fasano v. Washington Co. Comm.,* *supra,* is that if a decision on land use affects a specific individual or individuals as distinguished from a large class, the decision is quasi-judicial and subject to close judicial scrutiny. In particular, the record must be adequate to determine that proper procedures were followed, the relevant factors were considered by the agency and there was substantial evidence to support its decision. Can we without a verbatim record determine whether there was substantial evidence?

The record here, albeit not verbatim, is adequate to allow us to determine whether the decision was sup-

ported by substantial evidence. The minutes contain a summary of each witness' testimony, together with copies of the letters to the commission from various affected governmental agencies. Due process under *Fasano* protects against arbitrary action to the degree that there must be some evidence to support the decision, but does not guarantee how that evidence shall be weighed. We can discern from a descriptive summary of testimony whether there is evidence to support the findings. That a summary may not be complete is immaterial because it is not our function to weigh the evidence.

Petitioner argues that minutes place him in the untenable position of challenging a record, the contents of which are controlled by the tribunal whose decision is being challenged. The argument assumes that in a writ of review proceeding he is precluded from introducing any evidence outside the record. Petitioner is correct that the general rule in writ of review proceedings is that the trial court is limited to review of the record developed by tribunal below and cannot conduct a de novo proceeding. *Lechleidner v. Carson, supra; Duddles v. City Council of West Linn, supra.* However, in *Duddles* we recognized that there are occasions when the rule is unworkable. In that case we held that there must be an evidentiary hearing in the trial court limited to the standing issue. Likewise, the trial court should allow an evidentiary hearing for the purpose of proving an alleged procedural irregularity that does not appear in the record. For example, a petitioner may want to prove that in fact no notice was given to interested persons although the record indicates to the contrary. Another example would be evidence concerning ex parte contacts that are not made part of the record. *See Tierney v. Duris,* 21 Or App 604, 536 P2d 431, Sup Ct *review denied* (1975). The hearing should be carefully limited to evidence germane to the alleged procedural defect.

Finally, a petitioner should be allowed an evidentiary hearing if there is an allegation that the minutes

contain a material misrepresentation. For example, assume the minutes report the city engineer as testifying that the sewers for the subdivision are adequate when in fact he testified to the contrary. If it is further assumed that the only evidence supporting a finding of adequate sewers is that testimony, then the petitioner should be entitled to an evidentiary hearing to show that the minutes are false. Conversely, however, neither party is entitled to an evidentiary hearing because minutes do not reflect the entire testimony. The tribunal under review is bound by its own record. The party seeking review is limited to showing that there was no substantial evidence to support the decision. The only purpose served the petitioner by an evidentiary hearing to complete the record would be to enable the court to weigh the evidence and that is beyond the scope of the review.

In this case the city prepared adequate findings of fact upon which the decision was based. From a review of the summaries of testimony in the minutes and documentary evidence in the record, we conclude there was substantial evidence to support the findings.

Affirmed in part; reversed in part and remanded.