Argued July 25, affirmed October 30, 1978

# DRAIN et al, *Appellants,*
### *v.*
# CLACKAMAS COUNTY et al, *Respondents.*
### (No. 87416, CA 9448)

585 P2d 746

William L. Brunner, Portland, argued the cause and filed the brief for appellants.

James E. Redman, Milwaukie, argued the cause for respondents McGahuey, R & L Enterprises, Inc. and Hart's Homes, Inc.

James E. Auxier, Portland, argued the cause for respondents Wilson, Anderson, Wellock and Keith L. Wilson Construction Co., Inc.

Scott H. Parker, Oregon City, argued the cause for respondents Clackamas County and Clackamas County Board of County Commissioners. On the brief were James E. Redman, Milwaukie, James E. Auxier, Portland, and Scott H. Parker, Oregon City.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Petitioners own residential property located near a subdivision in Clackamas County called Woodland Court. They filed a petition for a writ of mandamus, seeking to require the county, acting through the board of county commissioners, to cancel building permits issued for single family residential structures on lots in the subdivision and to compel the removal of the structures (which have a total estimated value of about $260,000) either by the county, the developers of the subdivision or the property owners, all of whom are named defendants. Petitioners claim that the subdivision plat was approved and the residences built in violation of county zoning ordinances fixing a minimum lot size and that under ORS 215.185[1] they are entitled to compel removal of the structures.

A dismissal of the writ upon defendants' demurrer to the amended petition resulted in an earlier appeal, *Drain v. Clackamas County,* 22 Or App 332, 539 P2d 673 (1975). We reversed the dismissal, holding that the amended petition stated a cause of action. The case was heard on that petition, and the trial court granted judgment in favor of defendants on several independent grounds. Petitioners appeal.

On May 9, 1972, defendant Ruth McGahuey applied to the county planning commission for approval of a subdivision plat for the property in question. The area of the proposed subdivision and the surrounding area

---

[1] ORS 215.185:

"In case a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used, in violation of an ordinance or regulation designed to implement a comprehensive plan, the governing body of the county or a person whose interest in real property in the county is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration, or use. When a temporary restraining order is granted in a suit instituted by a person who is not exempt from furnishing bonds or undertakings under ORS 22.010, the person shall furnish undertaking as provided in ORS 32.010 to 32.060."

(including petitioners' property) was at that time zoned single family residential with a minimum lot size of 7,000 square feet (R-7), and the plat was based on that zoning.

Also on May 9, 1972, petitioners and other nearby property owners seeking to block the subdivision applied for a zone change to reclassify an area including the proposed subdivision and other land from R-7 to R-20 (single family residential with a minimum lot size of 20,000 feet).[2] Both the application for approval of the subdivision and the application for the zone change came before the county planning commission at a public hearing on June 26, 1972. Petitioners were present at the hearing. The planning commission gave conditional approval to the subdivision plat and recommended the zone change. The planning director stated that the recommended zone change was not intended to affect the subdivision. Petitioners did not then object.

After a public hearing at which petitioner Mr. Drain was present, the board of county commissioners approved the zone change on August 4, 1972. Although the reclassified area included the proposed subdivision, it was again said that the subdivision would not be affected. That opinion, expressed both by the planning director and by the county commissioners, was based upon an interpretation of the Clackamas County regulations for subdivision approval. The property in question has since been in the R-20 classification.

On September 25, 1972, the dedications in the subdivision were made. On October 12 the planning commission gave final approval to the plat, and on November 14 the board of county commissioners gave its final approval. On December 19, 1972, the plat was recorded.

_____

[2] The subdivision consists of eight lots. Lots 6, 7 and 8 were not included in the rezoning and remain in the R-7 classification.

In late 1972, the lots were surveyed and staked out. At about that time petitioners Drain and Slonecker wrote to the county commissioners, expressing their concern that the development would not be in compliance with the R-20 zoning. Having noticed further activity on the land in question, the petitioners retained counsel in January, 1973. In April, 1973, their counsel notified the planning commission, the county commissioners and the district attorney of their concern that the development was going forward in violation of the R-20 zoning. They did not communicate with the developers. In the summer of 1973, streets, curbs and sewers were installed and water permits were issued. In October, the builders' petition for variances from the R-20 setback requirements was denied by the board of adjustment. Petitioners, aware of the application for variances, appeared at the hearing and again expressed to the planning commission and the county commissioners their concern about non-compliance with the R-20 lot size requirements.

In the period from December, 1973, through February, 1974, the builders applied for building permits for single family dwellings on the five lots in question. The permits were issued in accord with the subdivision approval. On February 4 and 5, 1974, after they had noticed the beginning of construction on the lots, petitioners, through counsel, gave written notice to the county commissioners, the planning commission and the district attorney of the alleged zoning violations and requested them to take action to correct those violations. No notice, however, was given to the non-governmental defendants, and petitioners made no other attempt to stop the construction. The county authorities took no action. On May 22, 1974, petitioners filed their initial petition for writ of mandamus. By the time the alternative writ naming the non-governmental defendants was issued on July 9, all five houses had been completed, one had been sold, and earnest money agreements had been signed for three others.

After hearing evidence on the amended petition, the trial court ruled that the developers were required to meet only the R-7 minimum lot size requirement in effect at the time of conditional approval of the subdivision plat by the planning commission. Additionally, the court concluded that petitioners were guilty of laches and that the requested relief would be improper even if the houses had been built in violation of applicable ordinances, because on balance the equities weighed against requiring their removal.

The issue the parties were disputing from the time of the initial applications for subdivision approval and rezoning until the initiation of the mandamus proceeding was whether the conditional approval of the subdivision plat by the county planning commission insulated the subdivision from a subsequent zone change. That issue would involve the interpretation of several provisions of ORS chapters 92 and 215 and Clackamas County subdivision regulations as they stood in 1972.[3] In the application for the writ of

---

[3] In *Bienz v. City of Dayton,* 29 Or App 761, 566 P2d 904, *rev den* (1977), we relied upon the language in ORS 92.040 providing that a preliminary subdivision plat approval "shall be binding upon the city or county for the purpose of the preparation of the plat or map * * *." We stated that

"* * * [t]he apparent intent of this provision is to enable the subdivider to proceed with his project, including not only the preparatory steps to filing a final plat, but actual construction, with the assurance the city cannot later change its mind. * * *" 29 Or App at 769.

The language relied upon in *Bienz* did not appear in ORS 92.040 as it appeared in 1972, when the preliminary plat approval was given and the zone change was made. It was added by Or Laws 1973, ch 696 § 7.

Respondents argue, however, that under the Clackamas County Subdivision ordinances as they stood in 1972 preliminary plat approval insulated the development from subsequent zone changes. We agree that the ordinances can be read to have given preliminary approval that effect, but it is not clear that such an ordinance was consistent with the then existing provisions of ORS chapters 92 and 215. ORS 215.190 provided, as it does now, that

"[n]o person shall locate, construct, maintain, repair, alter, or use a building or other structure or use or transfer land in violation of an ordinance or regulation authorized by ORS 215.010 to 215.190 and 215.402 to 215.422."

mandamus, petitioners sought *only* the removal of the structures. They alleged no damages; an award of damages would not, therefore, have been appropriate had petitioner prevailed. *Taggart v. School District No. 1,* 96 Or 422, 188 P 908, 1119 (1920).[4] The trial court denied the requested relief on several independent grounds, but we do not reach the question of the effect of the zone change upon the conditionally approved plat.

A substantial issue in the mandamus proceeding

ORS 215.130(4) provided in material part:

"The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. * * *"

Respondents have not argued that they had established a "use" prior to the zone change.

The validity in 1972 of a county ordinance insulating a subdivision which had been preliminarily approved by the planning commission from a subsequent zone change by the board of commissioners regardless of whether a "use" had been established depends on a determination of legislative intent, a determination that would be so difficult as to be not very reliable. Moreover, because ORS 92.040 has since been amended, that determination would not contribute significantly to the development of the law. We choose, therefore, to base our decision on other grounds. *See Hickman v. Six Dimen. Cust. Homes,* 273 Or 894, 543 P2d 1043 (1975).

[4] In *Taggart* the court stated:

"There was no allegation in the writ about any damages suffered by the plaintiff on account of the conduct of the defendants. It is said in Section 620, L. O. L.:

" 'The pleadings in the proceedings by *mandamus* are those mentioned in Sections 618 and 619, and no others are allowed. They are to have the same effect and to be construed and may be amended in the same manner, as pleadings in an action.'

"Further, in the following section, it is said:

" 'If judgment be given for the plaintiff, he shall recover the damages which he shall have sustained by reason of the premises, to be ascertained in the same manner as in an action, together with costs and disbursements, and a peremptory *mandamus* shall be awarded without delay.'

"It is well nigh a platitude to say that without an allegation of damages no judgment therefor can be supported. The award of damages in this instance was a pure gratuity and cannot be sustained in any view of the case."

The statutes relied upon by the court remain unchanged in all material respects. ORS 34.190; 34.210; *see also* ORS 16.210(2)(c).

going beyond whether the subdivision plat was properly approved and the building permits properly issued was whether defendants should be required to remove the residences. In *Swaggerty v. Peterson,* 280 Or 739, 572 P2d 1309 (1977), and *Frankland v. City of Lake Oswego,* 267 Or 452, 517 P2d 1042 (1974), the Supreme Court recognized that balancing the hardships may in an appropriate case limit the relief to be granted for violation of a zoning ordinance, even in the face of the explicit terms of ORS 215.190. Under the circumstances here, even if the subdivision had been improperly approved and the building permits improperly granted, the equities weigh substantially against removal of the structures.

Petitioners were fully aware of and participated in the subdivision approval proceedings. They were among those who initiated the rezoning and knew that the rezoning had been approved by the county commissioners before the final subdivision approval. They were present at hearings when county authorities made it clear that they intended to allow the subdivision to be developed at R-7 density despite the rezoning. They had knowledge of final approval of the subdivision plat on an R-7 lot size basis and observed various preparatory activities on the lots, all of which led them to recognize that construction was going forward despite the R-20 zoning. They expressed their concern to county authorities in late 1972, in April and October, 1973, and finally in February, 1974. They still made no effort to notify the developers, the builders or the owners of the property in question until they filed their amended petition for writ of mandamus; nor did they attempt to enjoin the construction, as they might have done under ORS 215.185.

Meanwhile, the builders proceeded with construction in reliance upon the county's approval. They had no reason to doubt the validity of that approval or to expect that anyone would bring legal proceedings in an attempt to block the development. (*Compare Swaggerty v. Peterson, supra,* where the builder continued

[ 806 ]

with construction despite notice from plaintiff that the construction would violate restrictive covenants; *see also Parks v. Tillamook Co. Comm. Spliid,* 11 Or App 177, 501 P2d 85 (1972, *rev den* (1973)). By the time the builders were served with the alternative writ, the homes were completed, one was sold and the others were about to be.

The trial court found that the development did not have significant adverse impacts upon the petitioners or their property and that the hardship to the developers, builders and owners by requiring removal of the homes outweighed any hardship to petitioners. Under the circumstances, the trial court properly refused to order removal of the homes. *Hickman v. Six Dimen. Cust. Homes,* 273 Or 894, 543 P2d 1043 (1975).

Affirmed.