*[253]
 
 SCHWAB,
 
 C.
 
 J.
 

 Petitioner University of Oregon seeks review of an order of the Employment Relations Board (ERB) which held that the University had breached its statutory duty under ORS 243.672(l)(e), part of the Oregon Public Employes’ Collective Bargaining Law, to bargain collectively in good faith.
 
 [1]
 

 . The University and Local 1893 of the American Federation of State, County and Municipal Employees were parties to a collective bargaining agreement which expired April 15, 1976. Local 1893 represents student employes who work in food preparation and service at the Erb Memorial Union at the University. In February 1976, negotiations for a new contract between Local 1893 and the University were initiated. At that time, both parties executed written collective bargaining ground rules for their bargaining sessions, clause 5 of which read:
 

 "Proposals and Counterproposals
 
 — At the first session following agreement on these ground rules, the Union will place all of its proposals on the table in proposed contract language. After discussions sufficient to clarify for employer representatives the intent and purpose of the union proposals, the employer will at the next session, present its proposals in proposed contract language. Thereafter, the table will be closed to new issues except by mutual agreement of the parties.”
 

 The University has provided reduced meal prices for student employes in the food service since 1950. The price of a meal has always been calculated at the cost of the raw food sold — approximately 40 percent of retail cost. In 1950, the reduced meal price for a student employe was $.25. In 1961, the cost of a meal had risen to $.50, reflecting an increase in food costs.
 
 *[254]
 
 In May 1976, a management study of the Erb Memorial Union recommended that the meal price should again be raised to $.75 to reflect current food costs. On May 17 or 18, the University posted notices on the employes’ bulletin board informing them that the reduced meal price would be raised to $.75 effective June 1,1976. The expiring labor contract contained no reference to meal prices.
 

 Local 1893 and the University met several times between February and May 1976 in an attempt to reach agreement on a new contract. A formal mediation session between them was held at the end of May. The President of Local 1893 had requested that the mediator raise the issue of the meal price increase at this mediation session. However, the mediator told the Local President that it was his "strong desire to keep any new issues out of the mediation process,” and that he wished "not to move into any new subjects prior to the first mediation session.” The issue of the meal price increase was not raised at this mediation session nor at a second session held on June 3,1976, when the Local indicated it would accept the University’s contract offer. The contractual terms were finalized on June 7, 1976. On June 14, 1976, the parties signed a collective bargaining contract for 1976-78.
 

 The meal price increase went into effect as scheduled on June 1,1976. On June 10, the Local filed an unfair labor practice complaint against the University with the ERB alleging a violation of ORS 243.672(l)(e).
 

 The ERB, in an order dated February 2,1977, found that the price of meals paid by Local 1893 employes is a mandatory subject for collective bargaining and that the Local’s failure to formally demand that the University bargain on the price change did not mean that the Local had acquiesced in the change. The ERB held that the University had a duty to bargain with the Local before unilaterally implementing a change in the student employe meal price and, by refusing to so
 
 *[255]
 
 bargain, violated ORS 243.672(l)(e). The ERB ordered the University to cease and desist from refusing to bargain with Local 1893 as to the meal price rise for its student food service employes. The University then filed this petition for judicial review.
 

 Initially, we note that the scope of our review of an order of the ERB is limited.
 
 Springfield Ed. Assn v. Sch. Dist.,
 
 24 Or App 751, 756-57, 547 P2d 647 (1976). We must affirm ERB’s interpretation of the laws it is authorized to administer unless it is "unlawful in substance or procedure.”
 
 [2]
 
 ORS 183.482(8)(a);
 
 Springfield Ed. Assn v. Sch. Dist., supra
 
 at 757. In our review of ERB interpretations of the Oregon Public Employees Collective Bargaining Law, we may give some weight to federal decisions interpreting similar sections of the National Labor Relations Act, 29 USC §§ 151 et seq (1971).
 
 Klamath Co. v. Laborers Inter. Union,
 
 21 Or App 281, 534 P2d 1169 (1975).
 

 Petitioner contends that the ERB should have dismissed Local 1893’s complaint on the ground that reduced meal prices is not a mandatory subject for bargaining. The scope of the employer’s duty to bargain collectively in good faith under ORS 243.672(l)(e) extends only to mandatory subjects for bargaining. These include matters of employment relations, namely direct and indirect monetary benefits, horns, vacations, sick leave, grievance procedures and other conditions of employment. ORS 243.650(7);
 
 Springfield Ed. Assn v. Sch. Dist., supra
 
 at 756. This court will usually defer to the expertise-based policy formulations of an administrative agency, including the ERB, especially where the agency is interpreting a broadly worded general statute.
 
 Fairview Hospital v. Moore,
 
 28 Or App 637, 640-41, 560 P2d 671 (1977).
 
 Wasco County v. AFSCME,
 
 30 Or App 863, 868, 569 P2d 15, 31 Or App 765, 571 P2d 549 (1977);
 
 Brusco
 
 
 *[256]
 

 Towboat v. State Land Bd.,
 
 30 Or App 509, 521, 567 P2d 1037, 31 Or App 491, 570 P2d 996 (1977);
 
 Bienz v. City of Dayton,
 
 29 Or App 761, 776, 566 P2d 904 (1977). We have, in the past, applied this rule to ERB determinations as to what constitutes a mandatory subject of negotiation.
 
 See Springfield Ed. Assn. v. Sch. Dist., supra
 
 at 756-57.
 

 In finding that the reduced meal price for employes of Local 1893 is a mandatory subject for bargaining, the ERB stated:
 

 "* * * There is a substantial body of private sector case law holding that the price of meals furnished to employes is not a mandatory subject for bargaining. However, this Board is not bound by such NLRB or federal circuit court decisions. In any event, each of these cases holding that meal price is not a mandatory subject is readily distinguishable on its facts, in that in each case the employer was not in the business of providing food, unlike Respondent herein. Hence, private sector precedent making an employe discount on the company product a mandatory subject of bargaining is more applicable to the facts presented herein. And on those facts it would be highly inequitable to permit Respondent to prevail on its contention that meal price is merely a permissive bargaining subject. The evidence shows that reduced price meals were furnished by Respondent for its own convenience, to prevent employes’ unscheduled and unauthorized eating on the job. It is apparent that reduced price meals function as an incentive to students to seek this type of employment. Over 50% of the student food service employes take advantage of the reduced rate. Where employes are students working on a part-time basis preparing and serving food, the availability to them of low cost food must be viewed as integral to their employment and an indisputable part of their compensation. The employer’s practice of providing meals at $.50 has become an established working condition. Under these particular circumstances, the price of the meal has become a mandatory subject for bargaining. (Footnotes omitted.)”
 

 Where employers offer their employes meals, housing or company-related services at reduced cost, the federal courts have looked to a number of factors in
 
 *[257]
 
 order to determine whether the benefit offered is a condition of work about which the employer must bargain. A reduced-cost company benefit may be characterized as a mandatory subject for bargaining if one or more of the following conditions is satisfied: (1) the cost of the benefit is substantially less than the market value of such benefits — such that the employe can be said to be receiving partial compensation; (2) employe utilization of the benefit is required by the lack of practical alternatives; and (3) a high percentage of employes takes advantage of the benefit.
 
 See N.L.R.B. v. Ladish Co.,
 
 538 F2d 1267, 1271 (7th Cir 1976);
 
 Seattle First National Bank v. N.L.R.B.,
 
 444 F2d 30, 34, n 5 (9th Cir 1971);
 
 McCall Corporation v. N.L.R.B.,
 
 432 F2d 187, 188 (9th Cir 1970);
 
 Westinghouse Electric Corporation v. N.L.R.B.,
 
 387 F2d 542, 547-49 (4th Cir 1967);
 
 N.L.R.B. v. Central Illinois Public Service Company,
 
 324 F2d 916, 918-19 (7th Cir 1963);
 
 National Labor Relations Board v. Hart Cotton Mills,
 
 190 F2d 964, 972 (4th Cir 1951); R. Gorman, Labor Law 500-01 (1976).
 

 In this case, the record indicates that the Local 1893 employes who take advantage of the reduced meal prices are students working part-time who have only a one-half hour lunch break. Over fifty percent of the employes of the Local take advantage of the reduced meal price provided by the University. In view of the relatively low price of the meals, the high percentage of employes taking advantage of the meals, and the limited length of time of the employe lunch break, we defer to the ERB finding that the reduced meal price is a mandatory subject for bargaining between the University and Local 1893. The ERB interpretation of ORS 243.672(l)(e) was not "unlawful in substance.”
 

 Petitioner alternatively contends that even if the meal price is a mandatory subject for bargaining, its duty to bargain in good faith was waived by Local 1893’s failure to demand negotiations on this issue. Although an employer’s unilateral change of a matter deemed to be a mandatory subject for collective bar
 
 *[258]
 
 gaining is normally regarded as a breach of the duty to bargain in good faith, an exception to that rule arises when the union has waived its right to bargain about the particular subject matter.
 
 See
 
 C. Morris, The Developing Labor Law 332-38 (1971), and cases cited therein.
 

 The ERB, quoting the following language from
 
 Labor Board v. Katz,
 
 369 US 736, 747, 82 S Ct 1107, 8 L Ed 2d 230 (1962), found that Local 1893’s failure to formally demand that the University bargain on the meal price change was not a waiver of its rights under ORS 243.672(l)(e):
 

 "* * * Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment
 
 under negotiation,
 
 and must of necessity obstruct bargaining * * (Emphasis supplied.)
 

 The ERB’s reliance on
 
 Katz
 
 was misplaced.
 
 Katz
 
 involved a situation where an employer took unilateral action on matters that were being discussed at collective bargaining sessions between the employer and a union. In addition, the employer’s unilateral action in
 
 Katz
 
 was carried out without any notice to the union. 369 US at 744. In the present case, the University gave Local 1893 at least two weeks’ notice of its planned action. More importantly, the matter with respect to which unilateral action was taken was never discussed in the collective bargaining sessions between Local 1893 and the University.
 
 Katz
 
 is no authority for the ERB finding that the University breached its duty to collectively bargain in good faith.
 

 Local 1893 contends that clause 5 of the negotiation ground rules prevented it from requesting the employer to bargain regarding the meal price increase, thus making a finding of waiver impossible. We disagree. While clause 5 may have prevented the union from unilaterally raising new issues at its bargaining sessions with the University, the clause did not prohibit the union from asking the employer
 
 *[259]
 
 that the issue of the meal price increase be considered in the mediation process, notwithstanding the mediator’s request that it not be. Local 1893 had clear and timely notice of the University’s action regarding the food price increase, a mandatory subject for collective bargaining, and made no protest or effort to inject the issue into the bargaining process.
 
 [3]
 
 Not until the filing of charges with the ERB, after it had agreed on a new contract without ever raising the issue with the employer, did Local 1893 raise the validity of the University’s meal price increase. Local 1893’s failure to request bargaining on the meal price increase constituted a waiver of its right to complain that the employer had violated ORS 243.672(l)(e).
 
 See International Ladies’ Garment Workers U v. N.L.R.B.,
 
 463 F2d 907, 918 (DC Cir 1972);
 
 Century Electric Motor Company v. N.L.R.B.,
 
 447 F2d 10, 13-14 (8th Cir 1971);
 
 N.LR.B. v. Spun-Jee Corporation,
 
 385 F2d 379, 384 (2d Cir 1967). For decisions of the National Labor Relations Board holding similarly,
 
 see Holiday Inn Central,
 
 181 NLRB 997 (1970);
 
 U. S. Lingerie Corporation,
 
 170 NLRB 750 (1968);
 
 McLoughlin Mfg. Corp.,
 
 164 NLRB 140 (1967);
 
 Justesen’s Food Stores, Inc.,
 
 160 NLRB 687 (1966). The ERB’s conclusion that Local 1893 did not waive its rights was "unlawful in substance.”
 

 Reversed.
 

 [1]
 

 ORS 243.672(l)(e) provides:
 

 "It is an unfair labor practice for a public employer or its designated representative to do any of the following:
 

 * ** * *
 

 "(e) Refuse to bargain collectively in good faith with the exclusive representative.”
 

 [2]
 

 An administrative agency interpretation is unlawful in substance if it is contrary to law, arbitrary, capricious, unreasonable, or an abuse of discretion.
 
 Springfield Ed. Assn v. Sch. Dist.,
 
 24 Or App 751, 757, 547 P2d 647 (1976).
 

 [3]
 

 The union’s failure to raise the issue of the meal price increase is contrary to the spirit of collective bargaining.
 
 See Century Electric Motor Company v. N.L.R.B.,
 
 447 F2d 10, 13 (8th Cir 1971), wherein the court, in finding that a union’s failure to protest an employer’s cancellation of a Christmas bonus waived its right to file an unfair labor practice complaint as to the cancellation, commented:
 

 "The statutory purpose of having general collective bargaining agreements negotiated would inherently seem to be to have the parties engage in good-faith endeavor to effect as full a basis as possible for securing harmonious relations between them. This intent of the Act is not being properly served if the parties do not deal with each other in that approach and spirit in their negotiations of such an agreement. An attempt by either party in such a general negotiation to* * * withhold some harbored grievance of which the other is not aware, in order to avoid discussion and possible fusion on it and so to keep the door open to subsequent controversy and contention between them, is not conduct which is entitled to administrative or judicial approbation * *