365

Argued and submitted July 22, 1987, affirmed June 1, 1988

AFSCME COUNCIL 75, AFL-CIO,
*Petitioner,*

*v.*

OREGON HEALTH SCIENCES
UNIVERSITY et al,
*Respondents.*

(UP-155-85; CA A41658)

755 P2d 141

Henry H. Drummonds, Portland, argued the cause for petitioner. With him on the brief was Kulongoski, Durham, Drummonds & Colombo, Portland.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief was Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

NEWMAN, J.

The American Federation of State, County and Municipal Employees (AFSCME) petitions for review of a ruling of the Employment Relations Board (ERB) that Oregon Health Sciences University (OHSU) did not commit any unfair labor practices during and after a representation election between AFSCME and the Teamsters, the incumbent union. We affirm.

AFSCME accepts ERB's formal findings of fact. Before 1985, Teamsters Local 223 represented a bargaining unit of approximately 2200 employees at OHSU. On April 9, 1985, AFSCME filed a representation petition with ERB seeking status as the exclusive collective bargaining representative of that unit. On April 16, 1985, the Teamsters and OHSU, whose current contract was due to expire on June 30, 1985, reached a tentative agreement on a new contract. That agreement provided for an across-the-board five percent pay increase "effective July 1, 1985, or upon signing of the Agreement, whichever is later." The members ratified the agreement, but it was never signed because of the pending representation election. On September 4, 1985, the Board certified AFSCME as the exclusive representative of the OHSU bargaining unit.

During the election, the Teamsters campaigned on the theme that it could "guarantee" the wage increase, while AFSCME could only make promises. OHSU management confirmed in both written and oral statements that, if the Teamsters were chosen, the five percent wage increase would be effective July 1, 1985, and that, if AFSCME were elected, the contract would be subject to negotiation.

AFSCME objected to OHSU's statements and told the bargaining unit that, if elected, it would allow members to chose whether to accept the same contract and wage increase as the Teamsters had previously negotiated or to negotiate an entirely new contract. It attempted to get OHSU to issue a statement to that effect during the election period. OHSU, however, responded that it would "not engage in bargaining a contract with AFSCME (or any other union) unless it is the certified representative of State employes."

After AFSCME won, its members unanimously voted

to seek the same contract as the Teamsters had negotiated. OHSU offered AFSCME a contract with the same substantive terms as the Teamsters contract but would not agree to a wage increase retroactive to July 1. The parties met only twice concerning the new contract and did not negotiate over any individual contract clauses. At the first meeting, when OHSU reiterated that it would not agree to the retroactive pay increase, AFSCME proposed that it accept the Teamsters contract without waiving any of its rights to seek the retroactive wages either through contract grievance arbitration or through the filing of an unfair labor practice complaint. At the second meeting, on September 30, 1985, OHSU agreed to the second option and the parties signed a tentative agreement which provided for a five percent wage increase effective on the first day of the month in which the agreement was reached—September 1, 1985. On October 20, 1985, AFSCME's members ratified the agreement.

In December, 1985, AFSCME filed this unfair labor practice complaint, charging that OHSU violated ORS 243.672(1)(a), (b), (c), (e) and (h).[1] In substance, AFSCME alleged that the tentative agreement between the Teamsters and OHSU, and OHSU's subsequent comments and memoranda, restrained employes in their support of AFSCME, improperly assisted the Teamsters and threatened to discriminate against the employes if they were to choose AFSCME over the Teamsters. ORS 243.672(1)(a), (b), and (c). It also alleged that, by refusing to offer the retroactive pay increase to

---

[1] ORS 243.672(1) provides, in part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"(a) Interfere with, restrain or coerce employes in or because of the exercise of rights guaranteed in ORS 243.662.

"(b) Dominate, interfere with or assist in the formation, existence or administration of any employe organization;

"(c) Discriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employe organization. * * *

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative.

"(h) Refuse to reduce an agreement, reached as a result of collective bargaining, to writing and sign such contract."

its employes after they had chosen AFSCME, OHSU discriminated against its employes because of their choice of bargaining representative and engaged in bad faith bargaining. ORS 243.672(1)(a), (b), (c) and (e).[2]

As relief, AFSCME asked that the Board order OHSU to cease and desist, in the future, from its "unlawful" pre-election campaign tactics. It did not seek to set aside the election. In addition, AFSCME requested that the employes be made whole for OHSU's "unlawful" discrimination by ERB's ordering OHSU to pay each employe in the bargaining unit the five percent wage increase retroactively for July and August. In the alternative, AFSCME asked that the Board order OHSU to bargain in good faith and to cease and desist from offering the bargaining unit less retroactive pay than it had offered to the bargaining unit when the Teamsters was the legal representative.

ERB dismissed all of AFSCME's charges. It identified as the key question whether OHSU was required by law to agree to the same contract, if requested by AFSCME, as it had previously negotiated with the Teamsters. ERB held that the employer had no such duty. It reasoned that it was well established in successorship law that a previous labor contract cannot be imposed on either a successor union or successor employer. *NLRB v. Burns International Security Systems,* 406 US 272, 92 S Ct 1571, 34 L Ed 2d 61 (1972); *American Seating Company,* 106 NLRB 250 (1953). It rejected AFSCME's argument that this case, where a successor union is attempting to bind the employer to terms agreed to with the predecessor union, is different from cases where the successor union was held not to be bound by the negotiated agreement.

Because OHSU could properly refuse to agree to the retroactive wage increase, ERB concluded that OHSU's pre-election statements were accurate statements of law and not unfair labor practices. It also held that, after the election, OHSU did not engage in bad faith bargaining or otherwise act unlawfully toward its employes by refusing AFSCME's demand for the retroactive wage increase. It noted that,

---

[2] AFSCME also claims that OHSU violated ORS 243.672(1)(h) when it refused to sign the agreement with language concerning the nonwaiver of remedy on the signature page. The argument is without merit.

because the parties only met twice and did not bargain over any substantive terms, there was an insufficient bargaining history from which it could find bad faith conduct.

AFSCME separately assigns as error ERB's dismissal of each of its unfair labor practice charges. It discusses the assignments together, however, and we shall do so as well. AFSCME first argues that ERB's conclusions are invalid because they are based on the premise that the OHSU-Teamsters agreement was reached before the onset of OHSU's legal obligation to cease bargaining. AFSCME argues that ERB applied an erroneous legal standard and that its factual finding was unsupported by substantial evidence.

■ AFSCME asserts that ERB made an error of law when it stated:

> "The traditional rule of the NLRB, like our rule adopted in *Oregon School Employes Association, Chapter 7 v. Salem School District 24J*, 8 PECBR 6625 (1984), has been that an employer must cease bargaining with an incumbent union when *notified* of the filing of a valid petition." (Emphasis supplied.)

AFSCME argues that ERB cases, including *Oregon School Employes Association, Chapter 7 v. Salem School District 24J*, 8 PECBR 6625 (1984), on which ERB relies, have consistently stated that the "mere filing" of a valid representation petition raises a question of representation sufficient to trigger the employer's duty to cease bargaining. *See Lake Oswego School District v. Lake Oswego Education Association*, 4 PECBR 2346, 2349 (1979); *Municipal Employees Local 483 v. Unified Sewerage Agency*, 3 PECBR 1716, 1724 (1978). However, the question in those cases was *whether*, not *when*, a question of representation had arisen and, in each, the employer had notice of the filing. Accordingly, in those cases, ERB did not decide the question. Here, ERB stated that notice was the triggering event. That rule is consistent with the legislative scheme and is not erroneous. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 228-230, 621 P2d 547 (1980); *AFSCME v. Board of Higher Education*, 31 Or App 251, 255, 570 P2d 388 (1977).

■ AFSCME argues, however, that, even if notice is the triggering event, ERB erred when it made a factual finding that OHSU did not bargain with the Teamsters after it

received notice of AFSCME's filing of a valid petition. In a footnote to its conclusions of law, ERB said:

> "[T]he conclusions of law in this case are based upon the premise that the agreement negotiated between OHSU and Teamsters 223 in the spring of 1985 was reached prior to the onset of the State's legal obligation to cease bargaining with the Teamsters because of the existence of the representation petition. *Neither party contends that the Teamsters' contract resulted from bargaining after the State became aware of the filing of the petition.* The record, however, is less than clear with regard to the relative timing of the events in question. The evidence shows that the petition was filed on April 9, 1985. The contract settlement between OHSU and AFSCME occurred on April 16, 1985. The record does not establish the date upon which OHSU received notice of the petition. The Employment Relations Board representation file, of which administrative notice is taken, shows only that notice of the petition filing was sent to the State on April 11, 1985 (without registered or certified service). *On these facts alone, it cannot be found that the State continued to bargain with the Teamsters after receiving notice that a valid representation petition had been filed.*" (Emphasis supplied.)

We do not understand that footnote to mean that ERB made the factual finding that AFSCME claims it made.[3] Rather, it only indicates that ERB could *not* make a factual finding about when OHSU received notice. AFSCME did not assert below that OHSU made the agreement with the Teamsters after OHSU had notice of the filing. AFSCME did not request the hearings officer to make such a finding. Indeed, the only testimony at the hearing on the subject was from the Executive Department's Director of Labor, who stated that he did not remember when he learned that AFSCME had made a sufficient showing of interest but that "it would be after April 18th." Furthermore, the hearings officer included the footnote quoted above in his proposed opinion, but AFSCME did not challenge it before the board. Under these circumstances, ERB did not err in premising its conclusions of law on the

---

[3] OHSU argues that the footnote is a factual finding supported by substantial evidence. Interestingly, it does not contend that AFSCME waived its right to argue that the tentative agreement was reached after OHSU had received notice. Indeed, OHSU spent most of its oral argument urging us to hold that the duty to cease bargaining is triggered only by actual notice to the negotiators themselves and that receipt of notice by the employer would not be sufficient. We need not address that argument.

assumption that the tentative agreement was entered into before OHSU received notice.

■ Even if the OHSU-Teamsters agreement was reached before OHSU had a duty to cease bargaining, AFSCME asserts that ERB erred in concluding that OHSU did not bargain in bad faith or engage in conduct which was inherently coercive of employes and which discriminated against employes because of their choice of bargaining representative. ORS 243.672(1)(a-c)(e). As ERB recognized, AFSCME's argument turns on its assertion that OHSU had a legal obligation to offer AFSCME, the successor union, the exact terms to which it had previously agreed with the Teamsters. We concur in ERB's judgment that OHSU had no such legal duty. Although AFSCME correctly asserts that federal and state precedent does not require the result reached by ERB, it does not direct us to any precedents that support the result which it urges. Rather, it argues that we must read those precedents to promote the policy of employe "free choice" and employer neutrality in representation elections. ERB noted, however, that policy considerations cut both ways. AFSCME's proposed rule could place the incumbent union at a disadvantage, because the rival union could not do worse than the incumbent and could very well do better. It concluded:

> "In cases where a tentative agreement has been reached between an employer and an incumbent union before a representation question is raised by a rival union's petition, the rival union simply must take the incumbent as it finds the incumbent. Similarly, in the ensuing campaign the incumbent must 'run on its record,' be it good or bad, and may sink or swim based upon the quality of the pre-petition contract it has negotiated. It is neither within the Board's authority nor within the policies of the PECBA for the Board to attempt to 'equalize' the bargaining capabilities of the competing unions. Indeed, if the bargaining unit employes are not permitted to perceive the differences in bargaining skills, abilities, and achievements of the competing unions, there would seem to be little point in holding these elections." (Footnote omitted.)

ERB's interpretation is consistent with the policy of the statute. *See Springfield Education Assn. v. School Dist., supra,* 290 Or at 228.

AFSCME's theory that OHSU acted *per se* unlawfully when it refused to agree to the same terms with

AFSCME as it had previously agreed to with the Teamsters having been properly rejected, ERB properly concluded that there was insufficient other evidence to prove the alleged unfair labor practices.[4]

Affirmed.

·

·

---

[4] As ERB recognized, an employer's refusal to offer a successor union the same terms to which it had previously agreed with the predecessor union may be *evidence* of bad faith bargaining, unlawful discrimination or improper assistance.